# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## EWING V. LITCHFIELD AND OTHERS.

### JUNE 27, 1895.

Absent, Buchanan, J.*

| | |
|---|---|
| 91 | 575 |
| 108 | 240 |

1. CHANCERY JURISDICTION—*Specific Performance—Contract to Build a Railroad.*—A court of equity cannot specifically enforce a contract to build a railroad, or to procure a railroad to be built by others. And where the chief object of a contract is to secure the building of a railroad, and one of the parties stipulates that upon failure to build such a railroad he will pay a sum certain in money, or will transfer and deliver certain stock, a court of equity will not entertain a bill to enforce the transfer of the stock.

2. CHANCERY JURISDICTION—*Specific Performance—Penalty—Forfeiture—Liquidated Damages.*—Upon the case stated, if the payment of the money, or the transfer of the stock be regarded as a penalty, or as a forfeiture, a court of equity will not enforce it; if as liquidated damages, then a full, adequate, and complete remedy is afforded at law, and equity has not jurisdiction.

3. CHANCERY JURISDICTION—*Specific Performance—Penalty—Forfeiture—Liquidated Damages.*—In proper cases, where parties have no other adequate remedy, a court of equity will specifically enforce contracts, but it will neither enforce a penalty or a forfeiture, nor permit it to be enforced in a court of law; nor will it permit a party, by the voluntary payment of the agreed penalty, to defeat the enforcement of the alternative contract.

4. CHANCERY JURISDICTION—*Damages—Ancillary Relief.*—A court of equity will not entertain a suit merely for the recovery of damages, nor will it undertake to give damages, save as ancillary or auxiliary to some one of its recognized subjects of jurisdiction, and then only such damages are awarded as may be *necessary* to do full and complete justice by way of compensation.

---

* Judge Buchanan had been counsel in the Circuit Court.

5. CHANCERY JURISDICTION—*Forfeiture—Penalty—Liquidated Damages.*—In cases of doubt whether the provisions of a contract constitute a forfeiture, a penalty, or liquidated damages, courts of equity strongly incline to that construction which declares it to be a forfeiture, or a penalty, rather than liquidated damages. For if it be construed as a forfeiture or a penalty, it will entertain jurisdiction to prohibit either the enforcement or the voluntary payment of the penalty or forfeiture, and will compel the performance of the alternative contract, if a proper case be made; but if it be construed as liquidated damages the jurisdiction of the court of equity is at an end.

Appeal from two decrees of the Circuit Court of Washington county, one pronounced February 3, 1892, and the other February 15, 1893, in a suit in chancery in which the appellees were the complainants and the appellant and J. D. Imboden were the defendants.

*Reversed.*

The opinion states the case.

*White & Penn,* for appellant.

*Daniel Trigg,* for the appellees.

KEITH, P., delivered the opinion of the court.

This bill was filed in the Circuit Court of Washington county by Litchfield and others, and sets forth the following facts:

In January, 1890, the plaintiffs entered into a contract with J. D. Imboden, by which the plaintiffs and the said Imboden agreed to procure $100,000 of stock of the Virginia & Tennessee Coal & Iron Company at the price of $10 or less per share of $100 each. These shares, together with 15,000 shares owned by the plaintiffs, were to be voted in a stockholders' meeting to be held within a period named and upon a notice prescribed in the contract, so as to acquire the control of $1,950,000 of the stock which remained in the treasury of the

Virginia & Tennessee Coal & Iron Company. · This block of 19,500 shares of stock was to be sold to Imboden at $10 per share, and in consideration of his purchase of the said treasury stock at this reduced rate, he undertook to secure and cause to be submitted to the said meeting of stockholders, for their ratification, a contract by and on behalf of the Danville & East Tennessee Railroad Company and the Atlantic & Danville Railroad Company with the Virginia & Tennessee Coal & Iron Company, binding the railroad companies to extend their roads into the lands and coal fields of the Coal & Iron Company, or to make connections therewith satisfactory to said parties, by means of other railroads, by the first of January, 1893, and to complete and have in operation the line of said railroad companies from Abingdon to Damascus on or before the first day of January, 1891, and to complete and have in operation all that part of the line of said railroads and their connections so as to connect Abingdon and the coal fields by the first of January, 1893, and then binding the said railroad companies, under certain terms therein named, for the transportation of the product of the coal fields owned by the Virginia & Tennessee Coal & Iron Company.

It is further provided that, unless the party of the first part, J. D. Imboden, or his assignees, shall, at the meeting of the stockholders provided in the contract, purchase the treasury stock and deliver, or cause to be delivered, the contract of the railroad companies as hereinbefore provided, or in the event of the failure of the first party to notify the parties of the second part of his readiness to conform to and to comply with the provisions of this agreement, then the contract entered into was to be null and void, except that the parties of the second part "shall be entitled to demand and receive from the party of the first part the amount of $50,000 of the stock of the Virginia & Tennessee Coal & Iron Company, or $5,000 in lieu thereof, by way of ascertained and

liquidated damages on account of the breach of this contract."

There are details of the contract entered into between the parties which we have thought it unnecessary to set out, but have contented ourselves with reciting what we conceived to be the features of the contract upon which this controversy depends.

The $50,000 of stock was to be deposited with the Exchange National Bank of Lynchburg by the party of the first part, to be held in accordance with the provisions of the contract; and it was also provided that the party of the first part should have the right to elect to pay either the stock or the money in cash as damages, in the event of his failure to comply with his contract.

Subsequently an amended bill was filed, and Thomas Ewing was made a party defendant, it appearing that J. D. Imboden in executing the contract set out in the original bill was acting as the agent of Ewing, and that Imboden had no personal interest in it. To this bill there was a demurrer, which the Circuit Court overruled, and such proceedings were had that a final decree was entered in the cause, from which Thomas Ewing has appealed, and his appeal presents for our consideration at the outset the propriety of the decree of the Circuit Court upon the demurrer to the bill.

It will be observed that this suit is brought not to enforce the specific performance of that which the defendant contracted to do—that is, to procure contracts from certain railroad corporations to build a line of railway into the coal fields controlled by the plaintiffs within a stipulated period; in other words, it is not a suit for the specific performance of the principal contract entered into between the parties. Stated broadly, that was a contract upon the part of Ewing to construct, or for him to procure others to construct, certain lines of road to certain points named in the contract, the

object being to develop the coal fields owned by the Virginia & Tennessee Coal & Iron Company, in which company the plaintiffs were large stockholders. Upon the part of the plaintiffs, in consideration of Ewing's procuring this road to be built, or procuring a satisfactory contract upon the part of others to build it, they were to unite with him, who, in the meantime, with their aid, was to secure $100,000 of the stock of the Virginia & Tennessee Coal & Iron Company, thus constituting a controlling interest in the company, and thereby give to the appellant the control of 19,500 shares of the stock at $10 per share.

In a proper case, a court of equity delights specifically to enforce contracts where the parties have no other remedy, or the remedy afforded elsewhere is less complete or satisfactory; but here the undertaking of the defendant is to build a railroad, or to procure others to build it, and courts of equity will not enforce contracts for that purpose. This seems to be well settled.

The object, and only object of this bill, is to recover what the parties have agreed upon, either as a penalty or forfeiture, or as liquidated damages. The breach of the contract is recognized and is the foundation of the relief sought, and the plaintiffs have resorted to this court and invoked its aid to enable them to gather, in the from of damages, the fruits of a mere breach of contract. There are cases in which courts of equity will award damages, but they are cases where, having obtained jurisdiction over the subject and of the parties, under some of the well recognized sources of equity jurisdiction, it is found necessary to award damages in order to do full and complete justice by way of compensation, as when, in the enforcement of a contract for the sale of land, the court finds itself unable to give the party seeking, and entitled to its aid, all that under his contract he should recover. In such a case the court will, as far as possible, specifically execute

the contract, and then ascertain the damages accruing by reason of its inability in the particular case thus to afford complete relief. The giving of the damages is ancillary or auxiliary to the jurisdiction specifically to enforce the performance of the contract. See *Nagle* v. *Newton*, 22 Gratt. 814.

The case before us being in its essence for the recovery of damages for a breach of contract, a court of equity is not to be beguiled into granting the relief sought because it is ingeniously concealed under cover of a prayer to compel the assignment of certain shares of stock. The great weight of authority in this country is, that a court of equity will not entertain a bill for such a purpose, though in England it seems to be otherwise. Had the subject and object of the principal contract between the parties in this case been the sale and purchase of the $50,000 of the stock in question, a court of equity would have left them to their remedy at law, and will certainly not hearken to their prayer when it appears that the stock, the assignment of which is sought, is itself but one form of the penalty or liquidated damages agreed upon as the measure of the injury sustained by the breach of the contract entered into.

Much of the argument addressed to us had for its object to enable us to determine whether or not the stock, or in lieu thereof the $5,000 in money, agreed to be transferred or paid by the appellant in case of a failure to perform the contract, was to be considered as a penalty, or as liquidated damages. This is a feature of the controversy which it is not necessary for us to determine, because in neither aspect of it are the plaintiffs entitled to the relief sought. A court of equity will neither enforce a penalty or forfeiture, nor permit it to be enforced in a court of law. It will go even further than this: It will not permit a party, by the voluntary payment of the agreed penalty, to defeat the enforcement of the alternative contract. It will not entertain a suit for the recovery of

damages merely, nor will it undertake to give damages, save, as before observed, as ancillary or auxiliary to some one of its recognized subjects of jurisdiction, and so far from liquidated damages constituting an exception to the rule that courts of equity will not entertain suits for damages for breach of contract, its seems that if the damages for the breach of a contract have been liquidated by the parties to the contract (that is, ascertained and agreed upon), that fact, so far from inviting the assistance of a court of equity is sufficient to repel it. Indeed, this must of necessity be so, for as the jurisdiction of the court to enforce contracts specifically rests upon the insufficiency of damages as a redress or remedy for failure to comply with a contract, the very foundation of jurisdiction seems wanting in those cases where the parties themselves have otherwise determined and have fixed a money value in the form of liquidated damages upon the injury sustained by its breach. In this view is found an explanation of the leaning shown by courts of equity in doubtful cases to construe such agreements as we are here considering as creating a penalty or forfeiture rather than liquidated damages. For, if it be determined that it is but liquidated damages, the jurisdiction of a court of equity is at an end, but if it be construed as a forfeiture or penalty, then it affords no obstruction to the interposition of the court of equity, because it will prohibit either the enforcement or the voluntary payment of the penalty or forfeiture, and will compel the performance of the alternative contract if a proper case be made. Courts of equity, therefore, always strongly incline to that construction which declares it to be a forfeiture or penalty rather than liquidated damages. In this case, however, a court of equity is without motive to prefer the one to the other construction. The alternative for which the penalty is given, if it be a penalty, is the securing of a contract for the building of a railroad. It is obviously impossible to compel the defendant

either to build it himself or to procure others to build it. It will leave the parties in the forum appropriate for that relief to recover damages for its breach—liquidated damages, if a court of law shall be of opinion that the parties so intended the stipulation in the contract, or damages as in ordinary cases, if a court of law shall be of opinion that the stock or money stipulated to be paid was a penalty. We have not referred to such cases. Cases upon the subject of the specific performance of contracts and other subjects discussed are too numerous even for citation. The whole subject has been treated with great fullness and ability in Pomeroy's Equity Jurisprudence, and we shall content ourselves with referring to the appropriate chapters in that work, and especially to sections 446, 447, 1401, 1402, 1403, and to Lawson on Rights and Remedies, pages 2588, 2590, 2591, as sustaining the views here presented.

We are of opinion that the demurrer to the bill should have been sustained and the bill dismissed, and therefore enter a decree reversing the decree of the Circuit Court.

REVERSED.