## Suburban Construction Company et al. v. E. E. Naugle et al.

1. SPECIFIC PERFORMANCE—*Will not be Granted at the Request of a Party when it Can Not be Enforced Against Him.*—A contract to be specifically enforced by the court must be mutual; that is to say, such that it may be enforced by either of the parties against the other, and it is immaterial what constitutes the want of mutuality, whether resulting from personal incapacity, from the nature of the contract, or from any other cause; whenever it is ascertained that the contract is incapable of being enforced against one of the contractors, he will be equally incapable of enforcing it against the other party.

2. SAME—*Of Contracts Including a Series of Acts.*—Courts will not undertake to enforce specific performance of contracts extending over considerable time, and including a series of acts, essential to a complete performance; and among such contracts, non-enforceable specifically, railroad building contracts are included.

3. Injunctions—*On Bills for Specific Performance.*—Where the object of a bill is to enforce specific performance of a contract, and that object can not be attained, a writ of injunction, ancillary thereto, will usually fall with the bill; for a court will not say we are unable to decree a specific performance of the contract, but we will restrain from actions which are inconsistent with it.

4. Same—*Issuance of, Without Notice.*—To avoid the necessity of notice of an application for an injunction, the complainant must show such facts by sworn statement as will lead the court to the conclusion that the rights of complainant will be unduly prejudiced if notice be given before the writ issues. And a statement that " complainants fear that unless restrained immediately and without notice, said parties * * will enter into some contract or make some fraudulent settlements whereby the interests of complainants * * * will be greatly diminished and injured," is too vague and indefinite to warrant a court in concluding that an injunction should issue without notice.

**Specific Performance and Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. Oliver H. Horton, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded with directions. Opinion filed July 15, 1897.

Knight & Brown and Green, Robbins & Honore, attorneys for appellants.

This injunction, being but ancillary to the ultimate relief —specific performance—can not be sustained if a case for specific performance is not made. Gelston v. Sigmund, 27 Md. 334, 343; Baldwin v. Society, 9 Simons, Ch. 394; Allen v. Burke, 2 Md., Ch. 534; Hovnanian v. Bedessern, 63 Ill. App. 353; Fargo v. N. Y. & N. E. R. R. Co., 23 N. Y. Supp. 360; Ross v. Union Pac. R. R. Co., Woolworth, 26.

The remedy by specific performance must be mutual, and in the present case will not be decreed in favor of appellees, unless equity would decree specific performance of the contract by appellees upon a bill filed by the Suburban Construction Company. Ross v. Union Pac. R. R. Co., Woolworth, 26; Cooper v. Pena, 21 Cal. 403, 410; Marble Co. v. Ripley, 10 Wallace, 339; Lancaster v. Roberts, 144 Ill. 213; Mastin v. Halley, 61 Mo. 196, p. 200; Blackett v. Bates, L. R., 1 Ch. App. Cas. 117.

It is a firmly established limitation upon the jurisdic · tion to decree specific performance that it will not be

decreed of a contract (like the one at bar), requiring the direct superintendence of the court, nor where the contract or duties to be performed are continuous. This rule has received emphatic application, especially in cases involving the construction or operation of a railroad, as will appear in the following cases : Ross v. Union Pacific Railway Co., Woolworth, 26; Texas Railway Co. v. Marshall, 136 U. S. 407; Oregonian Ry. Co. v. Oregon Navigation Co., 11 Sawyer 33; Peto v. Brighton Ry. Co., 1 Hemming & Miller, 468; South Wales Railroad Co. v. Wythes, 1 Kay & Johnson's Rep. 186; Grape Creek Coal Company v. Spellman, 39 Ill. App. 630; Harley v. Sanitary District, 54 Ill. App. 337; Danforth v. Phil., etc., Ry. Co., 30 N. J. Eq. 12; Blackett v. Bates, Law Reports, 1 Ch. App. Cas. 117; Johnson v. Shrewsbury Ry. Co., 3 DeG. M. & G. 914; Atlanta, etc., R. R. Co. v. Speer, 32 Ga. 550; Blanchard v. Detroit, etc., R. R. Co., 31 Mich. 43; Powell Coal Company v. Taft Vale Ry. Co., L. R. 9 Ch. App. Cas. 331; Port Clinton R. R. v. Cleveland, etc., R. R., 13 Ohio State, 544; Fargo v. N. Y. & N. E. R. Co., 23 N. Y. Supp. 360.

HATCH & RITSHER, attorneys for appellees.

The jurisdiction of equity to interfere by way of injunction is not confined to cases in which specific performance can be decreed, but is exercised whenever it can operate to bind men's consciences to a true and literal fulfillment of their agreement. Woodman, Specific Performance of Contracts, Sec. 109, 110, 112, 114; W. U. Tel. Co. v. U. P. Ry. Co., 3 Fed. Rep. 423; Pomeroy on Specific Performance, Sec. 24, 25, 310, 311 and 312; Lawrence v. Saratoga Lake Ry. Co., 36 Hun, 467; Chi., etc., R. R. Co. v. N. Y., etc., R. R. Co., 22 Am. & Eng. R. R. Cases, 270; Singer Sewing Machine Co. v. Union Button-Hole & Embroidery Co., 1 Holmes 253; Bumgardner v. Leavitt, 12 Lawyer's Rep. Ann. 776.

A glance at the more recent decisions in suits brought to enforce or to prevent the violation of contracts shows that the trend of decisions in recent years is to establish the

doctrine that, no matter how much of personal supervision specific performance may seem to entail on the court, a court of equity will not permit injustice to be done, but will command performance by general decree, and will restrain violation by general injunction, relying on its inherent powers to punish contempt and to enforce its mandates and defying the attempt of the wrongdoer to put himself where the hand of a court of equity can not reach. Prospect Park & C. I. R. R. Co. v. Coney Island & B. R. R. Co., 144 N. Y. 152.

The more recent adjudications of the United States Supreme Court are a direct refutation of the contention of appellants on this point. Union Pac. R. Co. v. Chicago, R. I. & P. R. Co., 163 U. S. 564; Joy v. St. Louis, 138 U. S. 1; Franklin Tel. Co. v. Harrison, 145 U. S. 459; Denver & R. G. Ry. Co. v. Alling, 99 U. S. 463; Memphis & L. R. R. Co. v. Southern Ex. Co., 117 U. S. 1.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

This is an appeal from an interlocutory order of the Circuit Court granting an injunction.

Appellees, as contractors, had undertaken by their agreement of November 28, 1896, to construct, equip for operation by electricity, and to operate for the period of two years, a certain system of railroad known as the Suburban Railroad Company. By the same agreement the Suburban Construction Company, one of appellants, undertook to pay appellees for such construction, services, etc., in stocks and bonds of the railroad to be constructed. Certificates of the stock were to be issued and delivered to appellees in accordance with the terms of the agreement, by S. P. Shope, as trustee.

The bonds, executed by the Suburban Railroad Company, were to be secured by a deed of trust to the Chicago Title & Trust Company. Both stocks and bonds were to be delivered to appellees as work progressed.

The bill alleges that certain of appellants, pretending to act for the Suburban Construction Company, have declared

that this contract has been abrogated by said Suburban Construction Company; and prays for the following relief:

" That the said defendants, and each of them, their agents, servants and attorneys, may be perpetually enjoined from interfering with, obstructing. or preventing the performance of the contract of your orators with the Suburban Construction Company, dated November 28, 1896, and from interfering with, obstructing or preventing the certifying, issuing and delivery of the bonds of the Suburban Railroad Company, and the beneficial certificates issued, and to be issued, by S. P. Shope, trustee, to your orators, in accordance with the terms of said contract of November 28, 1896, and from interfering with, obstructing or preventing said S. P. Shope, trustee, from carrying out and executing said trust agreement of March 16, 1896, and that said Charles S. Leeds, Herbert F. Hatch, Frank E. Hall, A. B. Leeds, C. C. Chandler, James B. Vredenburgh, Lyman A. Walton and Joseph A. Duffy, and each of them, their agents, servants and attorneys, may be perpetually enjoined from acting as officers or directors of the Suburban Construction Company in any matter relating to the rights, interests or contracts of your orators with said Suburban Construction Company, or from interfering, disposing of or encumbering, moving out of the State, or otherwise disposing of the property of the Suburban Construction Company, or its books and papers, or from making any contract, agreement or settlement relating to the construction or operation of the lines of railroad of the Suburban Railroad Company or of the lines leased from the receiver of the Northern Pacific Railroad Company by said Suburban Railroad Company, and that said Suburban Construction Company, its officers, agents, directors, servants and attorneys, may be directed to immediately transfer and deliver to your orators such bonds and beneficial certificates as shall from time to time be due to your orators under and by virtue of said contract of November 28, 1896, and that your orators may have such other and further relief in the premises as to your honors shall seem meet."

A preliminary injunction was granted.   Two reasons are urged by appellants why the injunction should be dissolved:

1.   It is contended that the true scope and purpose of the bill is to enforce a specific performance of the contract of November 28, 1896; that this contract is lacking in mutuality of possible enforcement; that it is such a contract as must come within the rule that courts will not specifically enforce railroad building contracts, and contracts for personal services; and that the prayer for injunction, being but ancillary to the main relief sought, can not avail, if the bill fails in its main purpose.

2.   That the injunction was improvidently issued, because without notice to defendants and without sufficient showing in avoidance of notice.

If the contract in question could not be specifically enforced as against the complainants, it should not be so enforced against the defendants.

This doctrine of mutuality seems to be well settled.   In Peto v. Brighton, etc., Ry. Co., 1 Hemming & Miller, 468, the vice-chancellor says : " This case turns upon the question how far this court can interfere where a contract provides that the plaintiffs, in consideration of certain shares and other advantages, which the company engaged to give them, were to complete the construction of some ten or eleven miles of railway.   *   *   *   Now, on this the difficulty at once arises, that if I restrain the transfer of these shares, I can only do so on an undertaking, on the part of the plaintiffs, that they will perform their part of the agreement; a submission to do so is a necessary ingredient in the bill, and it is essential that that offer should be one over which this court should have complete control.   *   *   * If these gentlemen, being under an undertaking, express or implied, to perform this agreement, should fail in doing so, I could not place the parties in the position in which both sides intended that they should be, and I should be driven to leave the defendants, when they came here to complain of such failure, to their remedy at law.   Seeing, therefore, that no arrangement could so deal with the case as to do

complete justice to both sides, I think the only proper course for this court to take, is to leave both parties to their remedies at law."

The same rule is declared in Cooper v. Pena, 21 California, 411:

" In respect to the remedy, therefore, there is no mutuality, and it is universally admitted that equity will not enforce a contract when the party asking its enforcement can not himself be compelled to perform it." And in Tyson v .Watts, 1 Maryland Ch., Sec. 13:

" And in addition to the elements of fairness, justice and certainty, the agreement must be mutual before the power of the court to order its specific performance can be successfully invoked." And in Duvall v. Myers, 2 Maryland Ch., Sec. 401:

" As I understand the decision, the right to a specific execution of a contract so far as the question of mutuality is concerned, depends upon whether the agreement itself is obligatory upon both parties, so that upon the application of either against the other, the court would coerce a specific performance." And in Waterman on Spec. Perf., Sec. 196:

" It is immaterial what constitutes the want of mutuality, whether resulting from personal incapacity, from the nature of the contract, or from any other cause. Whenever the absence of the essential element is ascertained to exist on the part of one of the contractors, and for that reason is incapable of being enforced against him, he will be equally incapable of enforcing the contract against the other party." And in Fry on Spec. Perf., Secs. 440–441:

" A contract to be specifically enforced by the court must be mutual—that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other, * * * where the plaintiffs had agreed to perform certain services in making a railway, which were of such a confidential nature that the court could not have enforced them if the defendants had sued the plaintiffs; and the defendants were to pay money, and do nothing else, the court refused specific performance,

on the ground, among others, of want of mutuality." And in Lancaster v. Roberts, 144 Ill. 223, quoting Fry on Specific Performance, as above :

We come then to the question: Could this contract be specifically enforced as against appellees ?

The contract is, in effect, an agreement upon the part of appellees to construct and equip a railroad, and to operate the railroad for a period of two years. The performance by appellees is but partly executed. Courts will not undertake to enforce specific performance of contracts, extending over considerable time and including a series of acts essential to a complete performance. Among such contracts, non-enforceable specifically, railroad building contracts seem to be included. In The South Wales Ry. Co. v. Wythes, 1 Kay & Johnson, 186, the vice-chancellor says :

" In the cases referred to, from that of Flint v. Brandon to Stover v. The Great Western Ry. Co., which was decided not in any way in opposition to the rule, but in perfect accordance with it, the court has held that contracts for building, and contracts for executing works generally, are matters which, in the first place, the court can not easily superintend.    *    *    *

In Stover v. The Great Western Ry. Co., the court anxiously guarded itself, by pointing out the special circumstances of that particular case.    *    *    *    But this court could hardly bring a suit of this description to a termination; the motions would have to be incessant for committal, or otherwise, for non-performance of the different orders with regard to the making of a particular bridge, cutting or other work."

In Ross v. The Union Pacific Ry. Co., a case in many respects similar to the one under consideration, reported in Woolworth, p. 30, Justice Miller says :

" The plaintiffs have done work and furnished material to the value of $40,000 or $50,000. They have made extensive arrangements for procuring the necessary capital, and for the purchase of the iron, and are fully ready and able to prosecute the work diligently and successfully. But the

defendant has notified them that their contract is forfeited, and the work covered by it he has employed other parties to perform. To secure its bonds, which are to be delivered to the new contractors, etc., the defendant has made mortgages on the road. The bonds have not been issued yet. The bill therefore prays for an injunction to prevent their issue, and on final hearing, that the defendant may be decreed specifically to perform its covenants in said contract.

If, for the purpose of compelling the parties to perform specifically their contract, the court, on the case made by its bill, ought to entertain it, it should grant the injunction. * * * On the other hand, if on the hearing, specific performance will not be decreed, there is no ground for the injunction, which is sought only for the purpose of making the final decree effective. * * * It is the settled doctrine of this court that such a contract will not be specifically enforced, unless the remedy is mutual; that is to say, that the covenant of the plaintiff to be performed on his part, and that of the defendant on his part, must both be of such a character that, if either of them shall be delinquent, the court can give relief by compelling its performance specifically by him. (Citing 2 Story Eq. Jr., Sec. 711, 723, 790; Cathcart v. Robinson, 5 Peters, 264.) I proceed, then, to inquire whether this contract is of such a character that, if the plaintiffs were in default, it could be specifically enforced as against them by a decree of this court. * * * No case is reported, I believe—at least none has been produced on the hearing—in which the court has undertaken to compel a party to build a railroad." And after a careful analysis of cases cited as apparently holding contra, the court concludes: "I am inclined to concur fully with Judge Story, that, in cases of contract to build a house or a bridge, 'or, I will venture to add, a railroad,' a specific performance would not now be decreed."

"It seems, therefore, that in granting this injunction, which would require that this railroad should be built, equipped and delivered by one party, and payments made by the other, under the control and compulsion of the court,

I should be going far beyond any adjudged case, or any principle established by any adjudged case."

Nor will courts attempt to do that which is beyond their power to accomplish, viz., to enforce specific performance of contracts requiring personal service.    Kennicott v. Leavitt, 37 Ill. App. 437, and cases therein cited.

Counsel for appellees urge that as this contract is largely executed, the rule, which has been so generally applied to contracts, mainly executory, may not here apply.

But the reason of the rule, viz., the difficulty of enforcing and supervising a continuous course of action, involving the rendering of some considerable personal service, still obtains. No matter how much has been done, the vital question remains, what is yet to be done? Here is still a portion of the road to be constructed, and the entire road to be operated. How can a court enforce and superintend this service? And, if not, then, mutuality of enforcement being wanting, it should not enforce the payment in part for such service.

A case wherein the services of the contractor had been partially rendered and the contract partly executed, is found in Fallon v. Railroad Co., 1 Dillon, 121.

While there is some conflict of decisions, the decided weight of authority seems to be to the effect, that, where the object of a bill in equity is to enforce specific performance of a contract and that object can not be attained, the writ of injunction, ancillary thereto, falls with the bill. That is, the court will not say, "We are unable to decree a specific performance of the contract, but we will restrain from actions which are inconsistent with the contract."

In Allen v. Burke, 2 Maryland Ch., Sec. 537, the chancelor says:

"The object of the bill is to enforce the specific performance of the agreement therein referred to, and for an injunction in the meantime to restrain the defendant from taking and conveying away," etc., etc., * * * "and it seems to me quite clear that if upon the plaintiff's case, as exposed by his bill, he is not entitled to a specific execution

of the agreement set up by him, he can not be entitled to the injunction, which is only ancillary to the principal object of the suit."

Counsel for appellees contend that there is a decided conflict of authorities upon these questions, viz., the doctrine of mutuality and non-enforcement of contracts of this sort, and the necessity of the failure of the relief by way of injunction upon the failure to attain a specific performance. And in support of their contention cite Lumley v. Wagner, 1 DeG., M. & G. 616, the leading case from which all authority seems to have been drawn for decisions contrary to the established rule. Upon careful analysis, however, a reason may be found why the court might in that case refuse to enforce a specific performance, and yet grant the writ of injunction prayed in the same bill. The defendant, a singer, had agreed to sing at plaintiff's theatre, and not to sing at any other, and the court enjoined her from performing at a rival establishment, though it was clear that the court could not compel her to sing for the plaintiff. But there were two important elements distinguishing it from the other authorities, viz., a covenant not to sing elsewhere, disregarded and broken, and in addition to the wrong done to plaintiff by breach of the engagement with him, a new and affirmative wrong threatened by aiding a competing rival. Hence the decision in this case may properly be regarded as resting upon other grounds and in no way conflicting with the authorities heretofore cited.

The case of Singer Co. v. Union Co., 1 Holmes, 257, rests upon the authority of Lumley v. Wagner, but without the same distinguishing features, and is a case clearly in conflict with the majority of English and American decisions. The court says in that case:

" The relief asked is specific performance and injunction. It is argued with great ability by the defendants, that the complainant is not entitled to specific performance, and that, therefore, it can not have an injunction which is merely auxiliary. Granting the premises, I am not prepared to concede the conclusion. If the court can not order a contract

Suburban Construction Co. v. Naugle.

for the making of button-hole machines to be specifically performed by reason of the impossibility of supervising the details of such a business, it does not follow that the bill may not be retained as an injunction bill.   It was formerly thought that an injunction would not be granted to restrain the breach of any contract, unless the contract was of such a character that the court could fully enforce the performance of it on both sides.   *   *   *   Upon this ground there were many decisions refusing to interfere with contracts for personal service, however flagrant might be the breach of them.   (Citing Kemble v. Kean, 6 Sim. 333; Kimberly v. Jennings, Id. 340; Baldwin v. Society, etc., 9 Sim. 393.)   *   *   *   " But all these cases were overruled, by one of the ablest chancellors who has adorned the woolsack, in Lumley v. Wagner."

That this case is clearly in support of appellee's contention, and quite irreconcilable with the authorities above cited, is beyond dispute.   It can only be said of it that it stands against the decided weight of authority, and hardly supported by the reason of Lumley v. Wagner, from which it draws its authority.   The Supreme Court of this State, while not passing upon the precise questions here involved, has yet indicated that it does not follow the reasoning of Singer Co. v. Union Co.   In Chi. Mun. Gas Light Co. v. Town of Lake, 130 Ill. 60, the court say :

" The bill of complaint in this case, though not strictly a bill for the specific performance of a contract, is, in substance, a bill of that kind.   In Pomeroy's Eq. Jr., Sec. 1341, it is said :   An injunction restraining the breach of a contract is a negative specific performance of that contract.   The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance."

Counsel also cite a number of decisions of the Supreme Court of the United States as sustaining their contention.

Upon examination it will be found that no one of them is in conflict with the rule.

In U. P. R. Co. v. C., R. I. & P. R. Co., 163 U. S. 564, the

court say in effect that the facts take it without the rule, thus: " But it is objected that equity will not decree specific performance of a contract requiring continuous acts, involving skill, judgment and technical knowledge, nor enforce agreements to arbitrate, and that this case occupies that attitude. We do not think so. The decree is complete in itself, is self-operating and self-executing," etc.

In Joy v. St. Louis, 138 U. S. 1, the use of the tracks of one railroad by another railroad company was involved, and the court say: " It is urged that the court will be called upon to determine from time to time what are reasonable regulations to be made by the Wabash company for the running of trains upon its tracks by the Colorado company. But this is no more than a court of equity is called upon to do whenever it takes charge of the running of a railroad by means of a receiver. Irrespectively of this, the decree is complete in itself, and disposes of the controversy, etc. * * * Considerations of the interests of the public are held to be controlling upon a court of equity when a public means of transportation, such as a railroad, comes into the possession and under the dominion of the court."

In Franklin Tel. Co. v. Harrison, 145 U. S. 459, the contract was for use by the complainant of certain telegraph wires. The case turned upon questions of right to terminate and hardship upon the parties in event of enforcement. The questions herein considered were not passed upon or discussed.

. In Denver & R. G. Ry. Co. v. Alling, 99 U. S. 463, there were involved construction of certain acts granting railroads right of way through public lands of the United States. And the court only undertakes to supervise the operation of the railroad to the extent of defining their respective rights under such grants.

In Memphis & L. R. R. Co. v. Southern Ex. Co., 117 U. S. 1, the questions involved were the relative rights of railroad and express companies, and the interest of the general public therein. In no event could the decision of the court there be construed as sustaining counsel's contention.

The case of W. U. Tel. Co. v. U. P. Ry. Co., 3d Fed. Rep. 428, also cited, presents peculiar facts, as shown by the opinion of the court. "If the contract were set aside it would, I think, leave the parties joint owners of the property, and a case for equity jurisdiction, in the adjustment and settlement of their respective interests would be presented."

So far as the decision announces, the doctrine that the court may negatively enforce specific performance by injunction, where it might not enforce such performance affirmatively, it rests solely upon the citation of Pomeroy on Spec. Perf., Secs. 24, 25, 310, 311 and 312. By examination of these sections we see that the author does not extend the doctrine announced beyond the cases applied to actors and singers, based upon Lumley v. Wagner, and the enforcement of covenants *not* to do specific acts. And as to the latter, qualifies thus (Sec. 25): "But the court will not interfere to restrain the breach of such a stipulation when it is merely ancillary to a more general contract, which can not be specifically enforced in its entirety." And in Sec. 312: "Finally, contracts which by their terms stipulate for a succession of acts, whose performance can not become consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill or judgment in such oversight, such as agreements to repair or to build, to construct works, to build or carry on railways, mines, quarries and other analogous undertakings, are not, as a general rule, specifically enforced."

The American courts seem to have been loth to follow the doctrine of Lumley v. Wagner, and certainly have not generally extended that doctrine beyond the reasoning of that case and the class to which it belongs.

We think it safe to conclude that no case can be found (certainly none has been cited to us, and we are unable to find any), in which it is held that a building contract providing for the construction and operation as well, of a railroad, can be specifically enforced, either as against the contractors to build and operate, or as against those with

whom they contract, and who are obligated to pay therefor, whether in money or in stock and bonds.

The remaining contention of appellants is that the writ should not have been issued without notice.

This court has repeatedly held that to avoid the necessity of notice under the statute, the complainant must show such facts by sworn statement, either in the bill or by affidavit accompanying the bill, as will lead the court to the conclusion that the rights of complainants will be unduly prejudiced if notice be given before the writ issues. Becker v. Defenbaugh, 66 Ill. App. 504, and cases therein cited.

No such showing is here made. The affidavit refers to the statements of the bill. They are as follows:

"That complainants fear that unless restrained immediately and without notice said parties and pretended directors and officers of the Suburban Construction Company and said Suburban Railroad Company will enter into *some* contract, or make *some* fraudulent settlements whereby the interests of complainants and the Suburban Construction Company and the Suburban Railroad Company and the value of the bonds of the Suburban Railroad Company, and the beneficial certificates of Shope, trustee, will be greatly diminished and injured, and your orators will be unduly prejudiced, and that if a notice of the application for a temporary injunction herein were given to them, that they would take such action before the said motion could be heard, thereby inflicting irreparable injury to your orators, and involving your orators and their property and contract rights in litigation, and thereby preventing the completion of the lines of said railroad on or before the first day of July, 1897, as required to be done under the ordinances of said town of Cicero."

What specific act is it that the defendants, or any of them, threaten to do, or, are likely to do, whereby complainant's rights could be prejudiced? The statements of acts threatened, or likely to be done, are too vague and indefinite to warrant the court in concluding that there was any danger that any specific thing would occur, prejudicial to

complainants, if the issuing of the writ were delayed for notice.

But the appeal is effectually disposed of by the decision reached upon the point first considered. Because the bill is in spirit and substance a bill for the specific performance of a portion of a railroad building contract, and for the rendering of personal services in the operating of a railroad, in considerable part unexecuted, and hence not a contract enforceable in equity, and because the injunction is but ancillary to such specific performance, the order is reversed and the cause remanded, with direction to the Circuit Court to dissolve the injunction.