[L. A. No. 1903.    Department Two.—February 27, 1908.]

PACIFIC ELECTRIC RAILWAY COMPANY, Appellant, v. A. CAMPBELL-JOHNSTON, C. S. CAMPBELL-JOHNSTON, and SAN RAFAEL RANCH COMPANY, Respondents.

SPECIFIC PERFORMANCE—CONTRACT TO BUILD AND OPERATE RAILROAD—ACTION TO ENFORCE DEEDS OF FRANCHISES—REMEDY NOT MUTUAL. —Specific performance of a contract cannot be enforced where there is no mutuality of remedy between the parties; and since a contract to build and operate a railroad cannot be specifically enforced a railway company whose line is not substantially completed cannot enforce specific performance of contracts to convey to it rights of way, and franchises, and a bonus of acreage, and to compel deeds of the same for want of mutuality of remedy against the plaintiff.

ID.—WILLINGNESS OF PLAINTIFF TO PERFORM—IMPOSSIBLITY WITHOUT DEEDS—REFUSAL OF DEFENDANTS—REMEDY AT LAW.—Neither the fact that the plaintiff is willing and has offered to complete its railroad upon the conveyances of the rights of way, franchises, and bonus of acreage agreed, nor that it has been constructed as far as it can be without such conveyances, nor the refusal by the defendants to permit it to be completed and operated over their lands, have any bearing on the equitable principle that where there is no mutuality of remedy there can be no specific performance. The railway company must be left to such remedies as it may have under the contract in an action at law.

APPEAL from a judgment of the Superior Court of Los Angeles County.    Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Bicknell, Gibson, Trask, Dunn & Crutcher, for Appellant.

Borden & Carhart, and Hunsaker & Britt, for Respondents.

LORIGAN, J.—This action was brought to compel the specific performance of a contract.

The contract, which is made the basis of the claim of plaintiff for a specific performance, is set forth in full in the complaint.

It was executed by all the parties to the action on February 2, 1903, and its preliminary recitals disclose, that the San Rafael Ranch Company was the owner of a large body of land lying between the cities of Los Angeles and Pasadena, a portion thereof, on the northeasterly boundary, being within the limits of the latter city, and the company was also the owner of a bridge across the Arroyo Seco near such northeastern boundary and within said city limits; that the Campbell-Johnstons had acquired franchises from the city of Los Angeles and from the county of Los Angeles to construct and operate street-railroads from the city of Los Angeles to the western boundary of the land of said San Rafael Company, and also contemplated purchasing a franchise then offered for sale, on February 3, 1903, by the city of Pasadena for a street-railroad over the streets of the said city within and near the northeast boundary of the land of said company; that the said San Rafael Ranch Company owned land on both sides of portions of the streets and lines of the right of way mentioned in the Pasadena franchise, and was interested in the construction and operation of a street-railroad upon the lines so indicated; that all the parties of the second part were interested in having a single- or double-track electric railway operated over the lines described in said ordinances across said bridge, and also over the lands of the parties of the second part upon the lines of the street-railway as heretofore surveyed; and that the Pacific Electric Railway Company was willing to construct and operate such railway over the lines aforesaid under the terms and conditions hereafter expressed.

Following the recitals it is then provided that the said parties of the second part, in consideration of the agreements, covenants, and conditions hereinafter contained, agreed to be kept and performed by the party of the first part, do hereby agree, if so requested to do, "to assign, transfer and set over to the party of the first part those certain ordinances, hereinbefore mentioned, granted by the city of Los Angeles, and by the board of supervisors of Los Angeles County, and to assign, transfer and set over to the party of the first part that certain ordinance hereinbefore mentioned, to be offered for sale in the city of Pasadena on the third day of February, 1903, if they, or either of them, acquire the same; and also to grant to the party of the first part the right to construct its railroad track

over the bridge hereinbefore mentioned . . . and operate its
cars thereover. . . . And the said parties of the second part
further agree for the consideration aforesaid to convey to the
Los Angeles Land Company, or such other person or corpora-
tion as the party aforesaid may direct, that certain tract of
land containing forty acres'' (describing it). The contract
then declares that ''in consideration therefor the party of the
first part agrees that upon obtaining the franchise from the
city of Pasadena hereinbefore mentioned, and securing the
rights of way over the lines as above indicated, such right of
way to be not less than forty feet in width on the surface,
with such additional width as may be required for the slopes
in the fills and excavations necessary in the construction of
said roadbed; and the forty-acre tract of land hereinbefore
referred to, it will proceed and construct, and operate a rail-
road, the cars thereon to be propelled by electricity, over the
lines above mentioned''; and, ''in the event that the parties
of the second part fail to acquire the rights of way and fran-
chises necessary for the construction and operation of the rail-
road upon the lines indicated in the ordinance granted by the
city of Los Angeles, and the ordinance granted by the board
of supervisors of Los Angeles County; and such other rights
of way over private property as herein contemplated; and to
convey the forty acres of land hereinbefore mentioned, and
the right to operate its cars over the bridge hereinbefore men-
tioned, then the party of the first part shall be released from
all obligations in law or equity to construct or operate a road
upon the lines hereinbefore mentioned.'' The contract then
declares that ''the intention and purpose of the parties hereto
is that the parties of the second part are to furnish a free
right of way from the junction of Marmion Way and Pasa-
dena Avenue, upon the line of the railroad heretofore sur-
veyed crossing the Arroyo Seco at or near the bridge now
constructed, hereinbefore referred to, and extending the same
to and over the line described in that certain ordinance granted
by the trustees of the city of Pasadena, to be sold on the 3d
instant, as hereinbefore mentioned; and the acquiring by the
party of the first part of said franchise to be granted by the
trustees of the city of Pasadena as hereinbefore provided.
And in the event that the said party of the first part acquires
such right of way and said franchises, and the forty acres of

land hereinbefore mentioned to be conveyed to the Los Angeles Land Company, then the party of the first part is to proceed as soon as practicable, to construct said railroad and continue the construction thereof in good faith until the same is completed, and thereafter to operate cars thereover, and said deed conveying said forty acres is to be placed in escrow with a bank to be agreed upon and to be delivered upon the completion and the operation of said road.'' These are the material portions of the contract.

Having set forth the terms of the contract and the description of the right of way, conveyance of which is sought, the amended complaint then alleges that plaintiff constructed an electric railroad according to the provisions of the franchise granted by the city of Pasadena, referred to in the agreement, through the streets of said city to the northeastern boundary of said tract of land belonging to defendants, and under the franchises granted by the city of Los Angeles and by the county of Los Angeles constructed its electric road from the city of Los Angeles to the western boundary of said land of defendants, and ever since the construction of said electric railways plaintiff has maintained and operated the same as an electric railroad, with well-equipped cars for the carriage of passengers thereon; that the defendants purchased the franchise of the city of Pasadena, referred to in the contract, and, subsequently, assigned it to plaintiff; that though demanded to do so, defendants have refused to transfer and convey to plaintiff the franchises granted by the board of supervisors of the county of Los Angeles and by the city council of the city of Los Angeles; that about September 8, 1904, plaintiff caused to be surveyed through said tract of land belonging to defendants a right of way from the connection of its electric railway at the said northeasterly boundary of said tract of land, and from this to the connection with plaintiff's railway at the western boundary thereof, which said right of way for an electric railway to connect with plaintiff's line as aforesaid, is over the same general route as the prior survey of the lines of a street-railway through said lands mentioned and referred to in said contract of February 2, 1903, and is the one which is described in the complaint; that said survey referred to in the contract was a preliminary survey only in order to determine the feasibility of constructing an electric railway through

the said land of defendants; that said preliminary survey formed the basis of the survey for the final location of the right of way described in the complaint and was so surveyed and located by the plaintiff under the direction and with the consent of the defendants, and the defendants accepted the said final location of said right of way and survey and platted their lands in lots and blocks with reference to and in conformity with said final location of said right of way; that the defendants, though requested, have refused to transfer and convey and deliver the possession of said right of way to plaintiff to enable it to construct its railroad thereon and thereover in accordance with the terms of said contract; that though demanded defendants have refused to execute a deed conveying said forty-acre tract of land, specified in said contract, to the Los Angeles Land Company, and to place the same in escrow, to be delivered to said Los Angeles Land Company upon the completion and operation of said road; that expecting and believing the said promises and agreements of defendants would be fully performed in accordance with said contract, plaintiff constructed the portions of said electric railway alleged to have been constructed; that said portions of said railway were constructed by plaintiff at great expense and as a part of the continuous line of railway contemplated to be constructed in accordance with said contract, and for the purpose of connecting the said lands of the defendants with and to furnish transportation between the same and the said city of Los Angeles and the said city of Pasadena; that the total length of said continuous line of railway is approximately 3.83 miles; that the length of the portion already constructed is approximately 2.78 miles; that the length of the portion remaining unconstructed,—to wit, the portion extending across the said lands of defendants,—is approximately 1.05 miles; that plaintiff has been ready and willing, and is still willing, to fully perform the contract on its part, and now offers to construct its railroad through said tract of land in connection with the portions of said line of railway theretofore constructed and to continue the operation of the whole of said line of railway in accordance with the terms of the agreement.

Other allegations of the complaint we omit as not bearing on the points presented on this appeal.

The prayer of the amended complaint is for a decree requiring defendants to execute conveyances to plaintiff of the right of way through the land of the San Rafael Company described in the complaint, and of the rights and franchises acquired from the city of Los Angeles and the county of Los Angeles; that defendants execute a deed of the forty-acre tract described in the complaint to the Los Angeles Land Company and that it be placed in escrow, and on completion of the line of railroad of plaintiff over said right of way and along the line described in said franchise, referred to in the agreement, and operating the same, the said deed be delivered to said Los Angeles Land Company.

A demurrer, general and special, interposed to the amended complaint, was sustained, and plaintiff declining to further amend, judgment was entered against it. This appeal is from the judgment, and the only point involved in it is as to the correctness of the ruling of the court in sustaining the demurrer.

It is conceded by both parties to this appeal that the demurrer was sustained on the general ground that the amended complaint did not state facts sufficient to constitute a cause of action, the principal reason stated by the court in sustaining it being that the contract relied on was not capable of specific performance for want of mutuality of remedy to both parties to it. Respondents while so conceding and relying on that ground here in support of the ruling of the lower court, based on it, insist that, the demurrer being sustained generally, the ruling is supported, not only for the principal reason given by the lower court, but upon the further ground that the contract relied on is too vague and uncertain in its material terms to entitle plaintiff to specific performance.

While this latter point is pressed here by respondents with as much earnestness as the point upon which it is conceded the ruling was based, we think it unnecessary to burden this opinion with a discussion of it. If the court was right in holding that the plaintiff was not entitled to such specific performance for lack of mutuality of remedy under the contract sued on, that is the end of the action as far as this appeal is concerned, and we think the ruling of the court below in sustaining the demurrer on that ground was correct.

It is the well-settled general doctrine that specific performance of a contract at the instance of one of the parties to it will not be enforced in equity, unless the contract is of such obligatory nature upon both parties that at the suit of either against the other the court would decree specific performance.

This is equally the rule under the code, which provides: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance." (Civ. Code, sec. 3386.)

The remedy of specific performance must be mutual, and the test of mutuality of remedy is applied by considering whether the agreement under which the remedy is asserted is of such a character that at the suit of either a court of equity would decree specific performance against the other. In applying this test, if it appears that the right to this remedy is not reciprocal, it is not available to either party to the contract. When there is no such mutuality of remedy, equity refuses to interfere and leaves the parties to assert their rights under the contract in a court of law.

As declared in the leading case in this state on this subject (*Cooper* v. *Pena*, 21 Cal. 404) : "The remedy must be mutual, as well as the obligation, and when the contract is of such nature that it cannot be specifically enforced as to one of the parties, equity will not enforce it against the other." And reiterating and sustaining the doctrine of *Cooper* v. *Pena* in its application to different contracts where specific performance was sought, but denied for want of mutuality of remedy, are *Anson* v. *Townsend*, 73 Cal. 418, [15 Pac. 49] ; *Stanton* v. *Singleton*, 126 Cal. 657, [59 Pac. 146] ; *Los Angeles etc. Co.* v. *Occidental Oil Co.*, 144 Cal. 533, [78 Pac. 25].

Having in mind this doctrine, that there must exist a mutuality of remedy in order to warrant specific enforcement of their contract by either party against the other, it is quite clear that no such mutuality exists under the contract upon which this action was based. When we examine that contract, it appears therefrom that the agreement on the part of plaintiff is to "build and operate" a railroad, and as appears from the complaint, in advance of construction of any part of its

railroad over the lands of the defendants, it is seeking to compel them to convey a right of way to plaintiff over such lands, and a further conveyance of what is apparently a bonus of forty acres of land.

Now, if a court of equity at the suit of the defendants could not decree specific performance against plaintiff of the agreement on its part to construct and operate the railroad, then plaintiff cannot enforce specific performance against defendants to convey the right of way and the forty-acre bonus because there is a lack of mutuality of remedy.

It will be observed, as we have said, that the contract on the part of plaintiff is "to construct and operate" a railroad, and under the authorities a court of equity cannot decree specific performance of a contract of that character.

In Wood on Railroads (Vol. I, sec. 210, p. 708), on the subject of actions for the specific performance of contracts to convey rights of way, it is said: "It (equity) will not decree specific performance of contracts which by their terms stipulate for a succession of acts; . . . such as agreements to repair or build, to construct works, to build or carry on railways, mines, quarries and other analogous undertakings." In Pomeroy on Specific Performance of Contracts the author says (sec. 312), while discussing the right to specific performance of contracts: "Finally, contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous and require protracted supervision and direction, with the exercise of special knowledge, skill and judgment in such foresight—such as agreements to repair or build, to construct works, to build or carry on railways, mines, quarries, and other analogous undertakings—are not as a general rule specifically enforced."

While the contract of plaintiff is both to "construct and operate" a railroad, the authorities hold that a contract providing either for the building or the operation of a railroad, cannot be specifically enforced. (*Strang* v. *Richmond P. & C. R. R. Co.,* 101 Fed. 511, [41 C. C. A. 474]; *Texas etc. Ry. Co.* v. *Marshall,* 136 U. S. 407, [10 Sup. Ct. 846]; *Oregonian Ry. Co.* v. *Oregon Ry. & Nav. Co.,* 37 Fed. 733; *Wharton* v. *Stoutenburg,* 35 N. J. Eq. 266; *Ewing* v. *Litchfield,* 91 Va. 575, [22 S. E. 362]; *Suburban Con. Co.* v. *Naugle,* 70 Ill. App. 384.)

Of course, if a contract which provides either for the building only or for the operation only of a railroad cannot be specifically enforced, a covenant providing for both the construction and operation could not be.

Aside from these authorities in other jurisdictions the case of *Lattin* v. *Hazard,* 99 Cal. 87, [27 Pac. 515], appears to be decisive to the effect that the contract here in question is of such a nature as not to be enforceable specifically. In that case it appears that suit was brought to compel specific performance of a contract to convey lands in consideration of the building of a railroad and its operation for a period of not less than ten years. The road was built but had not been operated for the required period when the action was brought. This court held that specific performance of the contract to convey could not be enforced at the suit of plaintiff; that there was a want of mutuality of remedy under the contract as the operation of the road for the stipulated period was a substantial and important part of the obligation of plaintiff which had not been performed and of which specific performance could not be decreed at the suit of defendant. This conclusion of the court, stated generally in the case cited, that specific performance of the stipulation in the contract to operate the road for ten years could not be enforced by defendant against plaintiff, was undoubtedly based (though there was no particular discussion of the point) on the general rule we have adverted to, that equity cannot enforce the specific performance of a contract to build or operate railroads. And, it is of no moment to the application of the rule that the stipulation is for the operation of such roads for a stipulated period or generally; equity cannot specifically decree their operation at all.

The case of *Stanton* v. *Singleton,* 126 Cal. 657, [56 Pac. 146], which was an action to compel specific performance of a contract for the erection of a quartz mill and opening and developing a quartz mine, is also in point, this being one of the undertakings as to which, with the building and operating of a railroad, Pomeroy states equity will not decree specific performance. The case last cited and the reasoning applied there in denying specific performance, is equally applicable here.

We pursue the consideration of this point no further. We have been cited to no authority in the briefs of appellant,

and our own examination has failed to disclose any, where it has been held that specific performance may be decreed to enforce a contract such as the one involved here. The rule, as we have seen, is to the contrary, and as defendants would be precluded under its application from obtaining a decree for specific performance against plaintiff to enforce the construction and operation of the railroad provided for had they sued to obtain such a decree, the plaintiff is equally precluded from maintaining an action to compel specific performance on the part of defendants. As both parties to the contract are not entitled to have it specifically enforced, there is a want of mutuality of remedy, and neither one is entitled to the aid of equity to enforce its specific performance against the other. Whatever rights they have must be enforced in an action at law.

It is, however, insisted by appellant that the general rule requiring mutuality of remedy is subject to the exception that when a party has substantially performed his part of the contract he may compel specific performance by the other party. And, in this regard, it is insisted that as it is apparent from the contract that the parties contemplated the construction of an interurban line, extending from the city of Pasadena across the lands of defendants and thence into the city of Los Angeles, there to connect with the railway system of plaintiff already in operation there, and as plaintiff has performed the major part of its obligation by constructing and operating its line from said cities to the boundaries on either side of said lands of defendants, this constitutes a substantial compliance with the contract on its part which removed the want of mutuality of remedy existing at the inception of the contract between the parties, and now entitles plaintiff to a decree of specific performance.

Undoubtedly the want of mutuality in the right to specific performance existing at the inception of the contract may be removed, and is removed, when there has been had a full or substantial performance of the contract. And, in the matter at bar, if the construction and operation of the railroad to the extent that it is alleged to have been done, can be said to constitute a substantial performance of the agreement to construct and operate it in its entirety, then plaintiff would be entitled to specific performance. The substantial execution by

plaintiff of its obligation would give present mutuality to the contract, although in its inception the contract lacked it. (*Spires* v. *Urbahn*, 124 Cal. 110, [56 Pac. 794].) But it is quite evident from the allegations of the complaint that the agreement on the part of plaintiff relative to the railroad has not been substantially complied with. Conceding that in contemplation of the parties under the contract the road was to be constructed and operated from Pasadena to Los Angeles over the lands of the defendants, it is admitted that it has not been constructed over such lands. There is still nearly one third of the road to be constructed and operated. The most that can be said is that the road has been largely constructed, but it certainly cannot be said that if nearly one third of it is still to be constructed and operated that the contract on the part of the plaintiff has been substantially complied with. The fact is that the road has only been constructed and operated as far as plaintiff can construct it in view of the alleged refusal of defendants to convey the right of way, a conveyance of which with other conveyances plaintiff seeks now to specifically enforce. And it is also true that plaintiff offers in its complaint to perform its part of the contract and complete and operate the road over the lands of defendants. But neither the refusal of the defendants to permit the construction over their lands, nor the willingness of plaintiff to do so, have any bearing in the application of the equitable principle that where there is no mutuality of remedy there can be no decree for specific performance. Every action for specific performance is predicated upon the refusal of a defendant to perform the terms of a contract which the plaintiff considers equity should compel him to perform. So that refusal to do so is of no moment as far as the right to such specific performance is concerned. Neither does the willingness or offer of the plaintiff to do what otherwise it could not be specifically required to do confer the right to compel it from the other party. If this were true, then in the present instance the plaintiff could, by expressing its willingness and offering to complete the road from Pasadena to Los Angeles over the lands of defendants, have demanded of defendants conveyances of the right of way and the forty-acre bonus involved here, and on their refusal to make them and without having completed any part of such road, but reiterating in the com-

plaint its offer and willingness to do so, have demanded specific performance of the defendants. The application of the equitable rule that equity will not specifically enforce a contract to complete or operate a railroad, or other analogous undertakings, is not based upon the inclination or disposition of the parties to the contract. Equity cannot specifically enforce a contract for the performance of *service;* and the construction and operation of a railroad comes within this category. The rule is applied because such undertakings are not of the character that a court of equity will undertake to enforce. Courts of equity only decree specific performance where the subject-matter of the decree is capable of being embraced in one order and is immediately enforceable. It will not decree specific performance when the duty to be performed is a continuous one, extending possibly over a long period of time and which, in order that the performance may be made effectual, will necessarily require the constant personal supervision and oversight of it by the court. Particularly is this true with reference to the construction and operation of railroads, which are enumerated by Pomeroy as among the undertakings concerning which specific performance will not be decreed, because, among other things, they require protracted supervision and direction of the court, with the exercise of special knowledge, skill, or judgment in their oversight. So that in those special and exceptional contracts mentioned by him, including the one under consideration here, as it is impracticable, if not impossible, to supervise and control any decree which the court might make relative to them, it will not undertake to specifically enforce them at all.

Now as there is a large and substantial part of the road still to be constructed and operated by the plaintiff, it cannot be said that there has been such a performance of the contract so as to bring plaintiff within the exception to the general rule. The reason of the rule still applies, and under the principle of the decisions a court of equity could no more effectually decree a specific performance on the part of plaintiff as to this portion of the road still to be constructed and operated, than it could as to the entire road, the construction of which it is claimed was in the contemplation of the parties. The want of mutuality of remedy originally existing under the contract, and which precluded plaintiff from asserting a

right to specific performance, could only be removed by a full or substantial performance on its part, and, as the contract is far from being so substantially performed, the want of mutuality still exists and specific performance cannot be decreed.

There are many other reasons urged by appellant why a court of equity should decree specific performance under the facts alleged in the complaint. They commend themselves to us as general, equitable principles, but cannot be applied here because the rule of equity, that specific performance of contracts of the special character involved here will not be enforced for want of mutuality of remedy, is so well established that it may not be departed from, and the parties must be left to assert such remedies as they have under the contract in an action at law.

For the reasons given the demurrer was properly sustained, and the judgment appealed from is affirmed.

Henshaw, J., and McFarland, J., concurred.