[Civ. No. 31813. Second Dist., Div. Five. Oct. 2, 1967.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. LAW BUILDING CORPORATION, Defendant and Appellant.

Kindel & Anderson and Angelo J. Palmieri for Defendant and Appellant.

Harold W. Kennedy, County Counsel, and Lloyd S. Davis, Assistant County Counsel, for Plaintiff and Respondent.

HUFSTEDLER, J.—Appellant appeals from a judgment granting respondent specific performance of a contract to convey real property to respondent and requiring appellant to account to the respondent for all rents and profits accruing from the property from May 16, 1966, until possession of the property is transferred to the respondent.

### Procedural and Factual Summary

All of the parcels of property with which we are concerned are located within the boundaries of the Los Angeles Civic Center. In connection with their plans for the development of Civic Center, the City and County of Los Angeles in 1953 undertook to eliminate the old Hill Street tunnel and to excavate and level the terrain upon and surrounding the site of

the county courthouse. The lands involved in this action, parcels A, B, C, D, E, F, and G, are about one block from the courthouse and are located within the land bordered on the west by Hill Street, on the east by Broadway, and on the north by Court Street. Parcel A has a frontage of 63 feet on Hill Street and extends east 165 feet to the westerly limit of parcel B. Parcel F, on which the Law Building stands, fronts on Broadway and extends to the easterly limit of parcel B. Parcel C adjoins parcel B to the north and fronts on Court Street. Parcel D fronts on Broadway south of parcel F and is separated from parcel F by a strip of land eleven inches wide, parcel E, once occupied by a party wall. Parcel D is deeper than parcel F; it extends almost to the westerly limit of parcel B. Parcels D and A are almost the same size. Parcel G, a dogleg parcel, is located south of parcel B between parcels B and D.

Before 1947 appellant owned parcels B, C, D, E, and F, but not parcels A and G. In that year the State of California condemned parcel D, which was thereafter transferred to the respondent. The building on parcel D was torn down and with it one-half of the party wall adjoining the Law Building, which resulted in the narrow strip called "parcel E."

The Law Building, parcel F, was built in 1925. A few years later it was leased to the respondent, which occupied the building until December 1952. In February 1953 appellant acquired parcel A for $25,000. Appellant demolished the old house on parcel A and developed it to provide parking for its Law Building, which it was remodeling for private offices. At that time Hill Street was 80 feet higher than Broadway, and the terrain between Hill and Broadway was rugged. The part of Hill Street on which the parking lot fronted dead-ended at Temple. Traffic on Hill was diverted through a tunnel. Appellant built a pedestrian bridge to get from parcel A over parcel B to the eighth floor of the Law Building on parcel F.

On April 17, 1953, pursuant to a duly adopted resolution of the board of supervisors, respondent filed an action to condemn parcel A. Appellant answered and asserted its claim for damages for the taking and for severance damages to its remaining parcels. Appellant did not challenge the validity of the taking or claim that there was an excess taking. By written stipulation, trial was set for March 22, 1954.

Appellant and respondent entered into the written contract which is the subject of this action on 13 April 1954. The contract recited the plans of the city and county to develop

the Hill Street area, the pendency of the action to condemn parcel A, and the interest of the parties in settling that litigation. Among the covenants were the following: Appellant covenanted that respondent "from and after the expiration of five (5) years from the date of the completion of the excavation of the entire Parcels 'A', 'B' and a portion of 'C,' . . . and the return of possession thereof by County to Corporation [appellant], and for twenty-five (25) years from such date of completion and return of possession shall have the right to purchase from Corporation said Parcels 'A' and 'B' and the leasehold interest of Corporation in said Parcel 'C' for the sum of $65,000, providing that concurrently therewith County, or any public government agency, acquires title to Parcels 'E' and 'F' . . ." Appellant further covenanted to quit temporarily possession of parcels A, B and C and to give the county the right to enter upon and excavate those parcels in accordance with the provisions of the agreement for a time and in a manner particularly specified therein. Respondent agreed to do the excavation contemplated on parcels A, B, C, and D and to return possession of those parcels to appellant upon completion of the excavation work. Appellant was given the right to use such portions of parcels A, B and C for parking purposes as would not interfere with excavation operations. Respondent rented parcel D to appellant for a monthly consideration of $15 during the time excavation work on parcels A and B remained uncompleted. Respondent conveyed parcel E to the appellant, and respondent granted an easement to the appellant to use parcel G for 25 years from the date of completion of excavation and return of possession of parcels A, B and C or until such time as the respondent acquired title to parcels A and B and the leasehold interest of the appellant in parcel C, whichever event was sooner. Respondent agreed to dismiss the pending condemnation action, and appellant waived its claims to costs, disbursements, expenses and attorneys' fees by reason of the dismissal.

The contract was approved by the board of supervisors on April 13, 1954.

Respondent dismissed the pending eminent domain proceeding to condemn parcel A, caused the grading and leveling of parcels A, B and C to be done, and performed all of the other covenants and conditions upon its part to be performed. On May 3, 1966, a final order of condemnation was rendered in an action brought by the respondent against the appellant, vest-

ing title in respondent to parcels E and F. Respondent on May 16, 1966, tendered to appellant a county warrant in the amount of $65,000 and requested execution and delivery of a grant deed covering parcels A and B and of the assignment of lease covering parcel C. Two days later appellant returned the warrant to the respondent with a letter stating, "We feel the contract referred to is unenforceable." Respondent thereupon filed the present action to obtain specific performance of the contract of 13 April 1954 and an accounting for all rents and profits accruing between May 16, 1966, and the date upon which possession of the parcels is delivered to the respondent.

Appellant filed an answer admitting the existence of the agreement and the other averments of the complaint referring to matters of public record, denying generally the other charging averments of the complaint, and alleging in general terms that it was induced to sign the agreement by undue influence and duress practiced by the respondent upon the appellant. The answer attempted to set out nine affirmative defenses. A demurrer was sustained to the answer, and appellant filed a first amended answer, repeating in conclusional language its averments of undue influence and duress. Appellant attempted to aver five affirmative defenses in that pleading. The first affirmative defense alleged that the board of supervisors acted in bad faith in adopting its resolution causing the complaint to be filed to acquire fee title to parcel A, because the public use required solely temporary possession for the purpose of changing the grade level of Hill Street and parcel A. Appellant further averred that it was coerced into signing a contract by reason of the county's threat to proceed with the "excess" condemnation action. The second affirmative defense incorporated the averments of the first affirmative defense and alleged that the respondent occupied a fiduciary relation to the appellant by reason of the respondent's superior knowledge and control over determinations of public use and that its conduct in securing appellant's signature to the contract was a breach of the fiduciary duty it owed to the appellant. The third and fourth affirmative defenses alleged in conclusional terms that the enforcement of the contract would deprive the appellant of its property without paying just compensation in violation of the state and federal Constitutions. The fifth affirmative defense averred that the contract is unjust and unreasonable and arose out of a harsh bargain negotiated by the respondent. Respondent filed a de-

murrer to the first amended answer, which was sustained without leave to amend as to all affirmative defenses.

The action was thereafter tried by a court sitting without a jury. The court found among other facts that the agreement of April 13, 1954, was on the date of its execution supported by adequate consideration to the appellant and that it was just and reasonable as to it. Specific performance was awarded to the respondent, together with a decree ordering an accounting of the rents and profits as prayed. This appeal followed.

Appellant does not present any argument to challenge the trial court's order sustaining without leave to amend the respondent's demurrer to the affirmative defenses of the first amended answer and any claim of error in respect of that ruling is accordingly deemed waived or abandoned. (*E.g., Title Guar. & Trust Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515].) Appellant attacks the sufficiency of the evidence to sustain the trial court's findings that the contract was supported by adequate consideration and that the contract was just and reasonable at the time the contract was made.

### Effective Agreement to Compromise

Throughout the appellant's brief there is a blending of the issues which were or which could have been raised in the action to condemn parcel A and the issues which were drawn in this suit to enforce the settlement agreement. ■ It is established law in this state that "a valid compromise agreement has many of the attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." *Shriver* v. *Kuchel* (1952) 113 Cal.App.2d 421, 425 [248 P.2d 35]. (Accord: *Frankfield* v. *Freiberger* (1932) 216 Cal. 266, 268 [13 P.2d 905]; *Fouratt* v. *Goodman* (1928) 203 Cal. 252, 254 [263 P. 533]; *Armstrong* v. *Sacramento Valley Realty Co.* (1919) 179 Cal. 648, 651 [178 P. 516]; *Silver* v. *Shemanski* (1949) 89 Cal.App.2d 520, 524, 532 [201 P.2d 418].) ■ All of the issues which were necessarily encompassed within the action to condemn parcel A, whether those issues were specifically raised in the pleadings or were issues which, if not raised, would have been foreclosed by the operation of the doctrines of bar and merger had the condemnation action resulted in a final judgment, are foreclosed by the compromise agreement if it is valid. (*Armstrong* v. *Sacramento Valley Realty Co.,*

*supra,* 179 Cal. 648, 651.) Into this category of foreclosed issues fall questions relating to the amount of compensation to which appellant would be entitled for the taking of parcel A had the condemnation action been tried, the existence and the amount of severance damages caused by taking parcel A, and the good faith of the board of supervisors in authorizing the condemnation of the entire fee of parcel A, instead of some lesser interest therein.

 Appellant does not, and on this record could not, seriously challenge the validity of the settlement agreement. It seeks instead to convince us that even though the contract was valid, it could not be specifically enforced because of the claimed inadequacy of consideration and the unfairness of the bargain.

### *Sufficiency of the Evidence*

Appellant's attack on the findings proceeds from the premise that respondent exceeded its power by authorizing the filing of the action condemning more than a limited interest in parcel A. The premise is wrong. First, the issue was foreclosed by the settlement agreement because it was an issue which, litigated or not, would have been barred by a final judgment in the condemnation action had the condemnation action been tried. Second, absent averments of fraud, bad faith or abuse of discretion ''in the sense that the condemner does not actually intend to use the property as it resolved to use it'' (and no such averments appear here), the question of the necessity for taking particular property cannot be litigated because the resolution of that question lies exclusively within the purview of the condemning body and it is not subject to judicial review. (*People* v. *Chevalier* (1959) 52 Cal.2d 299, 304-307 [340 P.2d 598].)

Appellant's attempt to attack the finding that the consideration was adequate is not directed, as it must be on appeal, to establish the lack of any substantial evidence to support the findings, but rather is an attack upon the weight and significance of the valuation testimony. Here again there is a confusion between the nature of the evidence which might have been adduced if the suit were an action in eminent domain and the suit which was actually tried to enforce the settlement agreement. The amount of damages which might have been received for the taking of parcel A and the severance of that parcel from the remainder of appellant's property was not in issue in the specific performance case. Those issues were

necessarily embraced in and foreclosed by the settlement agreement itself.

Disregarding any conflicts in the evidence and any inferences which were adverse to the prevailing party in the trial court, there was substantial evidence in the record to support the trial court's findings. The compromise agreement not only assured appellant that it would receive $65,000 for parcels A, B, and its interest in C at the time respondent exercised its rights to demand a conveyance of those parcels, but also gave to appellant a series of benefits which cannot so readily be measured in precise monetary terms. Those benefits were a conveyance of certain property interests held by the respondent in parcels E and G and the temporary use of parcel D, the assurance to appellant of the possession of parcels A, B and C for a minimum of five years and until the Law Building itself was acquired for public use, and the settlement of the then pending lawsuit, the outcome of which was by no means clearly predictable. Appellant has received and retains all of these benefits and has not at any time offered to return any of them to the respondent.

Appellant saves its primary ammunition for an attack on the justness and reasonableness of the settlement contract. The appellant's myriad complaints about the fairness of the bargain focus primarily upon the inequality of bargaining positions between a governmental agency with the power of condemnation and the landowner, who is compelled to choose between settling the controversy and litigating the amount of compensation to which he may be entitled in a condemnation action. It is true that the bargaining positions are not equal, but the inequality is implicit in any exercise of the power of eminent domain. A contract settling a condemnation action is not unfair simply because the landowner must either litigate or compromise. Indeed, that choice is one which faces any litigant who decides to avoid the uncertainties attendant upon a lawsuit in favor of the certitude of a settlement without trial. The appellant, had it chosen to do so, could have litigated indefatigably in the condemnation action each of the issues which it now attempts to press upon the court to avoid the consequences of the compromise. The only coercion which existed in this case was the necessity of deciding whether to litigate or to settle.

Appellant cannot be heard to complain that it could make a better bargain in 1966 after property values in the area of

Civic Center have escalated than it did make in 1953. ██ The fairness of a bargain is to be viewed in the light of the circumstances as they existed at the time the bargain was struck and not at the time the parties seek to enforce the rights based upon their earlier contract. (*O'Connell* v. *Lampe* (1929) 206 Cal. 282, 285 [274 P. 336] ; *Lundgren* v. *Lundgren* (1966) 245 Cal.App.2d 582, 589 [54 Cal.Rptr. 30].)

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.