[Civ. No. 50704. Second Dist., Div. Five. May 1, 1978.]

RAY ELLISON, Plaintiff and Respondent, v.
VENTURA PORT DISTRICT, Defendant and Appellant.

576

**COUNSEL**

Romney, Smith & Drescher, Philip C. Drescher and W. Stephen Onstot for Defendant and Appellant.

Heily, Blase, Ellison & Wellcome, and De Witt F. Blase for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—On December 23, 1970, plaintiff Ray Ellison (Ellison) filed an amended complaint against the City of San Buenaventura (City) and the Ventura Port District (District) for injunctive relief, specific performance, and damages. District owns and operates the Ventura Marina (Marina). Ellison owns property in the Ventura Keys Waterfront Homes subdivision (Keys) adjoining the Marina to the north.

City cross-complained against Ellison and District for declaratory relief alleging the existence of a controversy regarding maintenance of a navigation and drainage channel from the Keys through the Marina to the open ocean under a condemnation settlement agreement (agreement). Said agreement was between the original owners of the land now occupied by the Marina and Keys and the District. The original trial resulted in a decision recognizing the obligation of the District to maintain the channel in a navigable condition subject to limitations and restrictions resulting from the placement of water and sewer facilities located under the channel, the unavailability and expense of suitable dredging equipment, and the occurrence of natural and man-caused phenomena over which District had no control. The original judgment was silent, however, on the enforcement of District's obligation.

Ellison appealed from the judgment. The resulting decision is reported in 48 Cal.App.3d 952 (*Ellison I*).[1] In *Ellison I* we concluded that the clause limiting the obligation of District to maintain the channel was an addition engrafted onto the agreement contrary to the express agreement of the parties and for all practical purposes nullified District's obligation. Thus, we held that the judgment should be modified by deleting the said clause. In addition, since the trial court had made no disposition relative to the relief sought in Ellison's complaint, we could not merely modify and affirm the trial court's judgment. We therefore reversed and remanded for disposition of the issues raised by Ellison as to damages, specific performance and injunctive relief. A petition for rehearing was denied.

On remand, the trial court denied without prejudice a motion by Ellison for leave to file an amended complaint and reopen evidence as to damages. The trial court, however, granted a motion by District to amend its answer to present the defense of impossibility of performance to

---

[1] *Ellison* v. *City of San Buenaventura* (1975) 48 Cal.App.3d 952 [122 Cal.Rptr. 167].

specific performance of the agreement. The trial court entered findings of fact, conclusions of law and a judgment in favor of Ellison against District.

District appeals from the judgment. District contends that Ellison lacks standing to sue, that a finding that Ellison is a proper party to bring this action on his own behalf and on behalf of others similarly situated is without evidentiary support, and that the judgment of specific performance is unsupportable, unwarranted and against public policy. District also moves the court to allow it to augment the record on appeal and to produce additional evidence.

## DISCUSSION

We note preliminarily that Ellison does not appeal 'the trial court's refusal to allow him to file an amended complaint and reopen evidence as to damages. Thus, the only issues before the court are those raised by District in its appeal.

### Ellison's Standing to Sue

District contends that Ellison is not a real party in interest and thus lacks standing to sue. The basis for District's contention is the language in the corporation grant deed from the District to the original owners of Ellison's property which purports to convey the navigation easement in gross to the original landowners. Since, the District argues, there is evidence, although not presented at either of the trials or on the first appeal, which shows that the navigation easement was not conveyed to Ellison, Ellison has no right to assert the interest of the holder of the navigation easement.

For reasons discussed below, we deny District's motion to augment the record on appeal and to produce additional evidence and find no merit in District's argument that Ellison lacks standing to sue.

The major fallacy in the District's argument is its characterization of the easement as only a navigation easement. It is clear from *Ellison I* that the channel was built and was to be maintained as a navigation and drainage channel. (48 Cal.App.3d 952, 956, fn. 2.) The easement was by necessity and in fact one of navigation and drainage. It is also clear, and not contradicted by District, that the drainage easement was appurtenant

to the land.[2] Thus, no useful purpose would be served to find that the navigation element of the easement was in gross since Ellison would have standing to assert his rights under the drainage easement to require District to maintain the channel.

■ Even if we were disposed to find that the navigation element of the easement was in gross, which we are not, District would be estopped to raise this issue under the doctrine of the law of the case.

Generally, the doctrine of law of the case does not extend to points of law which might have been but were not presented and determined in a prior appeal. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 179 [18 Cal.Rptr. 369, 367 P.2d 865].) This general rule, however, is, subject to an important exception. The doctrine is held applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal. (*Gore* v. *Bingaman* (1942) 20 Cal.2d 118 [124 P.2d 17].) The question whether Ellison was a real party in interest and thus had standing to sue was necessarily involved in the first appeal and impliedly decided in favor of Ellison's standing. Thus District cannot now raise the issue on appeal.

*Specific Performance*

■ Initially, District contends that specific performance of the maintenance clause in the agreement should not be granted since Ellison can be adequately compensated in damages and thus has an adequate remedy at law. We find no merit in this contention. The covenant requiring District to build and maintain the navigation and drainage channel enhanced the value of the land retained by the original landowners and was a material factor which induced them to transfer the land on which the Marina was later built, at the price offered by District. The maintenance clause cannot be separated from the total transaction which was a contract to sell land. A presumption exists that the remedy at law is inadequate when the contract is for the sale of land. (Civ. Code, § 3387; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 25,

---

[2]Corporation grant deed, Book 2115, pages 230-234, official records, Ventura County, recorded March 2, 1962, states in part as follows:

"For a VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, VENTURA PORT DISTRICT, a public corporation, hereby GRANTS . . . . [a]n easement for navigation and drainage purposes . . . .

". . . . . . . . . . . . . . . . . . .

"The easement for drainage purposes above described shall be for the benefit of and appurtenant to the following described property:"

p. 5249.) Thus, we find that specific performance of the maintenance clause can be granted if all other principles governing the granting of such equitable relief are met.

■ Also District argues that equitable relief should not be granted since Ellison has not been irreparably injured. The concept of irreparable injury is more suitable in a discussion of injunctive relief than specific performance. It has been said that the term adds nothing to the concept of inadequacy of the legal remedy. (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 51, pp. 1499-1500.) Thus, our discussion of the adequacy of Ellison's remedy at law also answers this contention of District.

■ District next contends that specific performance should not be granted since it requires a series of acts for which continuous supervision is necessary. California apparently follows the old rule against specific performance of contracts where the contracts stipulate a succession of continuous acts which require protracted supervision and direction by the court with the exercise of special knowledge, skill and judgment by the parties performing the acts. (*Pacific etc. Ry. Co.* v. *Campbell-Johnston* (1908) 153 Cal. 106 [94 P. 623].) Mere statement of the rule, however, does not resolve the issue. The question is whether the maintenance provision in the agreement which requires periodic dredging of the channel is similar to those types of contracts in which California has refused to allow the remedy of specific performance on the rationale that continuous supervision by the court would be required. A review of the pertinent California decisions leads us to conclude that the contract in issue is not of this type.

The following contracts have been refused specific performance on the grounds of requiring continuous supervision: *Long Beach Drug Co.* v. *United Drug Co.* (1939) 13 Cal.2d 158, 171-172 [88 P.2d 698, 89 P.2d 386] [exclusive distribution or sales agency]; *Poultry Producers, etc.* v. *Barlow* (1922) 189 Cal. 278, 289-291 [208 P. 93] [output poultry sales]; *Pacific etc. Ry. Co.* v. *Campbell-Johnston, supra,* p. 113 [railroad construction or operation]; *Moore* v. *Tuohy* (1904) 142 Cal. 342, 347-348 [75 P. 896] [citrus grove development]; *Stanton* v. *Singleton* (1899) 126 Cal. 657, 665-667 [59 P. 146] [mine construction or operation]; *Thayer Plymouth Center, Inc.* v. *Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 303-305 [63 Cal.Rptr. 148] [automobile dealership]; *Whipple Rd. Quarry Co.* v. *L. C. Smith Co.* (1952) 114 Cal.App.2d 214, 216 [249 P.2d 854] [rock quarry operation]; *Moklofsky* v. *Moklofsky* (1947) 79 Cal.App.2d 259, 262-263 [179 P.2d 628]

[contract of sale of real property-staircase construction], but see, contra, *Gale* v. *Seymour* (1949) 91 Cal.App.2d 727, 728 [205 P.2d 752] [paving a parking lot] distinguishing the *Moklofsky* case; *Lind* v. *Baker* (1941) 48 Cal.App.2d 234, 246-247 [119 P.2d 806] [sale of mining claims]; and *Sheehan* v. *Vedder* (1930) 108 Cal.App. 419, 427-428 [292 P. 175] [oil field exploration or operation].

Compared to the complexity of the acts required in contracts for development or operation of railroads, mines, oil fields, or even citrus groves, the dredging of a channel pales to insignificance and should place no great burden on the court to supervise. Additionally, unlike exclusive distribution or sales agency contracts, no cooperation between the parties is required to fulfill District's obligation to maintain the channel. Thus, we see no reason to invoke this doctrine in the case at bar. Especially since the doctrine is an archaic one and should not be unduly extended.

District's main contention that specific performance of the maintenance clause in the agreement should not be granted because it is either physically impossible or, if physically possible, economically impractical to the extent of being legally impossible, is wholly without merit. In *Ellison I* we rejected the trial court's rewriting of the contract to release District of what the trial court apparently believed was substantial economic hardship and expense. On remand, the trial court concluded after extensive additional hearings that the evidence presented did not support either of District's main contentions.

On review an appellate court will not reweigh the evidence. All factual matters will be viewed most favorably to the prevailing party and in support of the judgment. The test is whether there is substantial evidence in favor of the respondent not whether it is slight in comparison with the opposing evidence. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; 6 Witkin Cal. Procedure (2d ed. 1971) Appeal, § 249, p. 4241.)

In the case at bar there is substantial evidence from Ellison's witness, Mr. Harmon, concerning the feasibility of alternative methods of dredging from which the trial court could properly reach the conclusion that maintaining the channel was not physically impossible. In addition, Mr. Harmon's testimony and the testimony of District's witness, Mr. Herron, on the cost involved in various dredging operations, when coupled with the testimony of District's witnesses, Mr. Klinger and Mr. Bustamonte, on the source and allocation of funds available to District

could properly allow the trial court to conclude that maintaining the channel was not economically impossible. Thus, we find no reason to modify the conclusions of the trial court on these issues.

■ District next argues that performance would cast an intolerable burden upon it and thus would not be "just and reasonable" under Civil Code section 3391, subdivision 2.[3] If we understand District's objection on this point, it is contending that a "hard bargain" is involved and equity should not lend its aid to its enforcement. To argue otherwise would not fit within the ambit of Civil Code section 3391, subdivision 2. It is settled that the fairness and reasonableness of a contract is determined from the circumstances as they existed at the time of the making of the contract. (*County of Los Angeles* v. *Law Bldg. Corp.* (1967) 254 Cal.App.2d 848, 856 [62 Cal.Rptr. 542].) A mere change of circumstances which makes performance more difficult or more expensive should not be a bar to specific performance of a contract. There is no evidence in the instant case which would indicate that the agreement was not fair and reasonable at the time the original parties entered into it or which would indicate that the maintenance of the channel was not reasonably within the contemplation of the parties at the time of the making of the agreement. Thus, we find no objection to the remedy of specific performance in this contention of District.

■ District next states that since it is a public entity, to grant specific performance of the agreement would interfere with its rule-making authority and would thus be against public policy. The gist of District's argument is that maintaining the navigation and drainage channel is a discretionary duty vested in the District akin to maintenance of city streets and thus not subject to control by courts of equity. If that was ever the law, it is not so now. (*Clay* v. *City of Los Angeles* (1971) 21 Cal.App.3d 577 [98 Cal.Rptr. 582]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720 [84 Cal.Rptr. 11].) In any event, District ignores the fact that its duty to maintain the channel arises from the agreement they voluntarily entered into and that there is nothing discretionary about their obligation. Thus, we cannot agree with District's contention on this issue.

■ District's next contention is that the trial court had no authority to require maintenance of the entrance channel at a width of 150 feet when

---

[3]Civil Code section 3391 states in pertinent part: ". . . Specific performance cannot be enforced against a party to a contract in any of the following cases: . . . 2. If it is not, as to him, just and reasonable."

the agreement requires a width of 300 feet. District is apparently arguing that the remedy of specific performance requires a court of equity to enforce the contract according to its terms, or not at all.

It is fundamental that a court of equity cannot make a contract for the parties (*Pasqualetti* v. *Galbraith* (1962) 200 Cal.App.2d 378, 383 [19 Cal.Rptr. 323]), and if specific performance is ordered, the decree should as nearly as possible require performance in accordance with the terms of the contract. (*Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 220 [32 Cal.Rptr. 415, 384 P.2d 7].) It does not follow, however, that a court of equity is required to enforce the contract completely, or not at all. Where it is possible to bring about substantial justice by adjusting the equities between the parties, a court of equity can grant relief. (*Lobdell* v. *Miller,* (1952) 114 Cal.App.2d 328, 344 [250 P.2d 357].) Thus, where, as here, the plaintiff does not complain that the relief granted is less than what the agreement called for, the defendant should not be heard to complain that the obligation required is not what it could have been.

*Class Action Language*

District appeals from the trial court's finding which uses class action language in the judgment. District contends that the statement that Ellison is a proper party to bring this action on his own behalf and on behalf of others similarly situated is without evidentiary support. The fear of District is that such language in and of itself would allow plaintiffs, of which Ellison is one, in a class action lawsuit now pending against District for damages sustained for breach of this very same maintenance provision in the agreement, to utilize the doctrine of res judicata to limit the District's defenses in the class action. Although we believe the language harmless, we can understand District's apprehension, and thus hold that the said language, in and of itself, should not be taken to limit any defenses which the District could raise in the pending class action suit. We wish to make it clear, however, that we are not deciding at this time the question of whether this case has any res judicata effect on the class action suit.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1978.