[Crim. No. 23869. June 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER A., Defendant and Appellant.

**COUNSEL**

Robert Patrick Murphy, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Kristofer Jorstad and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher N. Heard as Amicus Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**BROUSSARD, J.**—Defendant appeals from a conviction of second degree murder resulting in a sentence to state prison. A related petition for habeas corpus was consolidated with the appeal below. We granted a hearing to consider the contention that the trial court improperly rejected the recommendation of the Youth Authority that defendant be committed to its program.

Since there is no claim that the evidence is insufficient to support the conviction, we state the facts in summary fashion. Additional details will be explained as necessary in connection with the discussion of defendant's contentions.

Defendant was 17 years old on November 22, 1980, the date of the murder of Christina M. Defendant, the victim, and several other young persons attended a party at the home of Christina's cousin. About 10:30 or 11 p.m.,

they left the party with David J. and Veronica P. and drove in David's car to a playground. All were intoxicated; defendant was sick and vomiting. Veronica left the car. A little later defendant and Christina left, and David drove home alone.

The victim's body was discovered the next morning in a doorway near the house where defendant lived with his parents. The county medical examiner testified that she died from strangulation. He said there had been several separate applications of force to the neck, and noted other signs of struggle. She had a blood alcohol level of 0.17 percent. Semen was found in her vagina and rectum, but there was no evidence of a forcible sexual act.

Police officers questioned defendant, who denied being with the victim, but then changed his story and said he took the bus home from the park, leaving Christina with David. On November 28, defendant came to the police station with his mother and another relative. Police Inspector Erdelatz questioned defendant, who waived his *Miranda* rights and again implicated David. Erdelatz left defendant in the interview room and went next door to arrange for his transportation to a juvenile facility. About 15 minutes later defendant knocked on the door and said he wanted to tell the truth.

Defendant then said that he and the victim took a bus to his house. She told him she had become pregnant by her boyfriend, but that he refused to marry her. (Her boyfriend testified that Christina told him she was pregnant but they never discussed marriage; the medical examiner said that Christina was not pregnant.) She threatened to kill her boyfriend. Defendant became alarmed because he was her boyfriend's friend and feared that Christina's family might kill him, too. They started arguing. Christina scratched him, and he became angry and choked her.

Erdelatz went to defendant's house and with the consent of defendant's father searched defendant's bedroom, finding Christina's shoes and sweater. The police later obtained an ex parte order for a blood and saliva sample from defendant. These samples showed that defendant, but not David, was within the 12 percent of the male population who could have supplied the semen found in the victim's body.

Defendant was tried as an adult and convicted of second degree murder. He was thereafter referred to the Youth Authority for a diagnostic study and report. The report found him amenable to Youth Authority treatment, but the county probation officers recommended a prison sentence. The trial court accepted the latter recommendation, and sentenced defendant to state prison for the prescribed term.

We have examined defendant's contentions relating to the admissibility of his confession and other evidence, the voir dire of the jury and the number of peremptory challenges. For the reasons stated in the Court of Appeal opinion, we conclude that no error occurred which would require us to reverse defendant's conviction of second degree murder. We therefore turn to the question of defendant's sentence.

At the date of defendant's crime and sentence, Welfare and Institutions Code section 707.2 provided that "No minor who was under the age of 18 years when he committed any criminal offense . . . shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and *the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority.*"[1]

In accord with this provision defendant was referred to the Youth Authority for a report and recommendation. Following physical examination, psychological testing, and psychiatric interviews, the Youth Authority reported that defendant was amenable to its program. We quote the conclusions from this report:

"The Youth Authority's amenability determination in cases referred under Section 707 of the Welfare and Institutions Code focuses on whether or not an individual can be materially benefited by exposure to the department's reformatory and educational discipline. In the case of Javier [A.], it is concluded there is a reasonable possibility that the ward's likelihood to commit criminal behavior can be significantly reduced or eliminated within the confinement time and jurisdictional time available. This conclusion is based on the following observations:

"1. While the present offense is of the most serious magnitude, there is nothing in the records to suggest that Javier's criminal behavior is so firmly established that the pattern can not be altered or eliminated by exposure to Youth Authority programming. This young man has expressed a willingness to participate in substance abuse counseling and other programs designed to

---

[1] In 1982 section 707.2 was amended to strike the italicized language and add a paragraph stating that "The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor." Although legislative history is lacking, the apparent purpose of the amendment is to avoid any implication derived from *People* v. *Carl B.* (1979) 24 Cal.3d 212 [155 Cal.Rptr. 189, 594 P.2d 1], that defendant's ability to benefit from the treatment programs of the Youth Authority is the only relevant consideration in determining disposition.

result in correction of his unacceptable behavior. He also has a strong interest in completing high school and acquiring trade skills. Such services would be made available through a Youth Authority commitment.

"2. This young man is considered somewhat susceptible to negative influence by older, more sophisticated offenders. For this reason there is a reasonable possibility that his criminal behavior would be exacerbated more by the other dispositional alternatives available to the Court when compared with the dispositional alternatives available to the Youth Authority.

"3. Javier has no serious physical disabilities nor is he hampered by the presence of any pronounced psychosis that would interfere with his capacity to change.

". . . . . . . . . . . . . . . . . . . . . . . .

"At this point, it is the opinion of the Northern Reception Center-Clinic staff that Javier [A.] is amenable to the training and treatment offered by the Youth Authority."

The probation department, however, recommended a state prison sentence. Two probation officers testified to explain this recommendation. The investigating officer, Michael Pearcy, based his recommendation on the seriousness of the offense, the manner of the offense (choking the victim, which required prolonged application of great force) and the vulnerability of the victim, who was much smaller than defendant.

Officer Wertz testified at greater length, and assigned four reasons for recommending a prison sentence. First, he noted that defendant attempted to conceal his guilt and to shift suspicion on David. Second, he emphasized the serious character of the crime. Third, he testified that in various conversations with defendant "his main concern has been what's going to happen to him, how much time he's going to have to spend, and to make an impression on him I think it's a factor in rehabilitation that he should spend and be sentenced as an adult to state prison." Finally, Wertz was concerned about the length of the sentence and protection of the public. The applicable state prison term would be approximately twice the amount of time defendant would spend at the Youth Authority, even if confined until age 25. And in fact, Wertz added, under the practices of the Youth Authority, it is likely that defendant would be released much earlier. The average confinement for second degree murder at the Youth Authority, according to Wertz, was only 40 months. Both Pearcy and Wertz agreed that defendant had been cooperative at the Youth Authority; Wertz acknowledged that defendant was

"amenable" to Youth Authority treatment programs, but maintained that he was nevertheless "unsuitable" for Youth Authority commitment.

The trial judge rejected the Youth Authority recommendation. He cited defendant's failure to reform after previous juvenile court proceedings,[2] but based his decision primarily on the vicious nature of the crime and defendant's attempts to conceal his guilt.

Defendant argues that the trial court erred in failing to follow the standards established in our 1979 decision in *People* v. *Carl B., supra,* 24 Cal.3d 212.[3] Carl, age 17 when he committed the charged acts, was convicted of robbery and assault with a deadly weapon. Both the Youth Authority and the probation department recommended Youth Authority commitment. The trial court, however, rejected this recommendation on the ground that the reports offered no assurance that defendant would not engage in future criminal activity, and that a prison term was appropriate for the seriousness of the offense.

Introducing our opinion, we stated that "although we decline to hold that YA's recommendation is absolutely binding upon the sentencing court, nevertheless we conclude that YA's recommendation is entitled to great weight, that ordinarily it should be followed in the absence of substantial countervailing considerations, and that in the present case the sentencing court abused its discretion in ordering defendant committed to state prison." (Pp. 214-215.)

We then inquired into whether there was substantial evidence to support the trial court's implied finding of Carl's unsuitability to the training and treatment offered by the Youth Authority. We noted that the probation officer, the psychiatric consultant, the clinical psychologist, and the Youth Authority itself concluded that he was suitable; such expert testimony should be entitled to great weight. (Pp. 218-219.) Turning to the trial court's analysis, we found it deficient in two respects. "First, it is based upon the unfounded premise that YA's facilities are inadequate for the training and treatment of serious offenders." (P. 219.) The Youth Authority, however, is " 'primarily designed for the incarceration and discipline of serious offenders.' " (*Ibid.,* quoting *In re Aline D.* (1975) 14 Cal.3d 557, 567 [121

---

[2]In 1979 defendant was cited for receiving a stolen motorcycle, but the matter was dropped when defendant's father made restitution to the owner of the motorcycle. In 1980 he was charged with several offenses after an incident in which he and other persons were drinking beer and throwing empty bottles into a schoolyard; charges were later dismissed. Two weeks later he was charged with assault after he and several other men harassed and struck two victims. This charge was pending at the time of trial in the present case.

[3]Defendant's counsel cited *Carl B.,* but the court's oral explanation of its decision to sentence defendant to prison did not mention that case.

Cal.Rptr. 816, 536 P.2d 65].) "Thus, the seriousness of defendant's conduct, of itself, would not ordinarily constitute a legally sufficient ground to reject a YA recommendation under section 707.2." (*Ibid.*) Second, we said, "the sentencing court's understandable desire to impose a substantial period of confinement for society's protection could have been amply fulfilled by a YA commitment." (*Ibid.*) The Youth Authority could confine Carl until he reached 25, a period of 8 years—approximately the same length as his likely prison commitment. In addition, if defendant remained dangerous to the public, the Youth Authority could seek an extended commitment. (*Ibid.*, citing Welf. & Inst. Code, § 1800.) Thus, we concluded, neither reason given by the sentencing court constituted a legally sufficient ground for rejecting the Youth Authority's finding of defendant's amenability to treatment. The contrary finding of the trial court lacked the support of substantial evidence. (*Id.*, at p. 220.)

■ The essential message of *Carl B.* is that a decision to sentence a defendant to prison cannot be founded upon hostility to the Youth Authority's mission of rehabilitating serious offenders or doubt as to its ability to perform that mission. Thus a recommendation for Youth Authority commitment cannot be rejected on the ground that a person who commits a serious crime—even murder (see *In re Jeanice D.* (1980) 28 Cal.3d 210, 213, 216 [168 Cal.Rptr. 455, 617 P.2d 1087])—is per se unsuitable for Youth Authority commitment. Neither can it be based upon a fear that the period of Youth Authority confinement will be too short; the court must assume that the Youth Authority will properly perform its function, and will not release persons who remain a danger to the public, even if this requires that it initiate proceedings to continue confinement beyond a defendant's 25th birthday. Instead, a decision to reject a recommended Youth Authority commitment must be based upon considerations showing that the particular defendant before the court is unsuitable for such placement.

■ Certain of the reasons for a state prison sentence advanced by the probation officers in the present case are inconsistent with this reasoning. Both witnesses emphasized the seriousness of the crime of murder, and Wertz in addition stressed his forecast that the Youth Authority would not confine defendant long enough to rehabilitate him or to punish him appropriately for his crime. Other assertions of the probation officers, however, address matters appropriate under *Carl B.*: that defendant killed a vulnerable victim in a violent and prolonged manner; that defendant attempted to conceal guilt and shift suspicion to another person; that because of defendant's particular concern about the length of time he would serve, imposing a prison sentence would itself be rehabilitory. The trial judge also pointed to the vicious nature of the crime and to defendant's prior record—appropriate individualized considerations although one can question whether a

juvenile record that includes no actual convictions really suggests unsuitability for Youth Authority commitment.

The question remains whether these cited factors are sufficient to override the Youth Authority's recommendation. The Attorney General points out that in *Carl B.*, we described our opinion as an inquiry into whether "substantial evidence" supported the trial court's finding of defendant's unsuitability. (24 Cal.3d at p. 218.) As the term "substantial evidence" is defined in other cases, it requires only that the evidence be reasonable, credible, and of solid value. (See *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]; *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].) It does not require that the evidence appear to the appellate court to outweigh the contrary showing. (See *Ellison* v. *Ventura Port Dist.* (1978) 80 Cal.App.3d 574, 581 [145 Cal.Rptr. 665].)

Elsewhere in *Carl B.*, however, we spoke of the great weight to be given to the Youth Authority's recommendation, stated that this recommendation should "be followed in the absence of substantial countervailing considerations" (24 Cal.3d 213, 214-215), and that failure to do so constituted an abuse of discretion. Accordingly, whenever the trial court rejects the recommendation of the Youth Authority that a defendant be placed in its facilities, we must examine the record to determine if there is in fact substantial evidence of countervailing considerations of sufficient weight to overcome the recommendation.

Upon undertaking this examination in the present case, we conclude that such countervailing considerations are lacking. Defendant is not a sophisticated criminal. His crime, while both serious and vicious, was the impulsive act of a highly intoxicated 17-year-old. Against his clumsy efforts to conceal guilt we must weigh his voluntary confession at a time when the police had little evidence against him. The Youth Authority personnel believe that defendant can be treated and rehabilitated by their program, and neither the probation officers nor the judge dispute that assertion. Instead, both the probation officers and the trial judge appear to base their rejection of the Youth Authority's recommendation upon a feeling that a vicious murder by a 17-year-old deserves nothing less than a prison sentence—an arguable position from the point of view of deterring others from committing such crimes, but nonetheless one inconsistent with the rehabilitative philosophy of the juvenile law (see Welf. & Inst. Code, § 202) and the principles set out in *Carl B.*

We conclude that the trial judge abused his discretion in rejecting the recommendation for Youth Authority commitment. Although his decision did not rest entirely upon considerations impermissible under our decision

in *Carl B.*, neither did it appear to give great weight to the Youth Authority's recommendation as required by *Carl B.*, or declare the existence of countervailing factors of sufficient importance to justify rejection of that recommendation. Our review of the record discloses no countervailing considerations of sufficient weight to overcome the undisputed assertion of the Youth Authority that defendant is amenable to treatment and rehabilitation under its program.

The judgment is reversed insofar as it directs that defendant be punished by imprisonment in state prison. In all other respects the judgment is affirmed.

Bird, C. J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.**—I concur in the majority opinion insofar as it affirms the judgment, but dissent from the reversal of that portion of the judgment directing that defendant be punished by imprisonment in state prison. I believe that the trial court did not abuse its discretion in so sentencing defendant and that ample evidence supported its determination.

In *People* v. *Carl B.* (1979) 24 Cal.3d 212 [155 Cal.Rptr. 189, 594 P.2d 14], we held that the trial court erred when it rejected the uniform recommendation of the California Youth Authority (YA) and the defendant's probation officer that defendant be found amenable to and would benefit from confinement in YA. The trial court based its rejection of the recommendation on the grounds that there was no "assurance" of the defendant's rehabilitation in YA and that prison was appropriate in light of the seriousness of the offense and in order to protect society for a longer period. We reiterated that the applicable section (Welf. & Inst. Code, § 707.2) did not divest the trial court of discretion to sentence the defendant in a manner other than that recommended by YA. However, we emphasized that sentencing discretion "is circumscribed by the purposes which underlie that section" and to that end, on appeal, we must "determine whether there was substantial evidence to support the trial court's implied finding of defendant's unamenability or unsuitability 'to training and treatment offered by the Youth Authority.' (Welf. & Inst. Code, § 707.2.)" (24 Cal.3d at p. 218.)

We found no such substantial evidence in *Carl B.*, concluding instead that the sentencing court "failed to accord proper weight to the YA report and recommendation" because of its reliance on two erroneous assumptions. (24 Cal.3d at p. 219.) First, the court improperly concluded that the facilities available could not appropriately deal with serious offenders. We observed that "the seriousness of defendant's conduct, of itself, would not ordinarily constitute a legally sufficient ground to reject a YA recommen-

dation under section 707.2. It is the YA's business to deal with serious offenders." (*Ibid.*) Next, the court incorrectly assumed that YA confinement would not be for a sufficient period to protect society's interests.

The majority here reverses on the ground that while the trial court's decision "did not rest entirely upon considerations impermissible under our decision in *Carl B.*, neither did it appear to give great weight to the Youth Authority's recommendation as required by *Carl. B.*, or declare the existence of countervailing factors of sufficient importance to justify rejection of that recommendation." (*Ante,* p. 820.) I cannot agree. Initially, the majority fails to recognize that in *Carl B.*, the recommendations of the defendant's probation officer, a psychiatrist consultant, a clinical psychologist, and YA itself were identical: defendant was a suitable subject for YA confinement. We therefore concluded that "*The unanimous opinion* of those persons who have studied defendant should be given great weight." (24 Cal.3d at p. 219, italics added.) In the present case, of course, there was no such unanimity and the weight to be accorded those "who have studied defendant" therefore must be distributed between those favoring and opposing YA commitment.

The majority summarizes the "appropriate matters" addressed by the probation officers and the court here which militated in favor of commitment to state prison. I find that list and the supporting evidence in the record convincing. (See *ante,* p. 818.) The 16-year-old victim was vulnerable both because she was much smaller than defendant and because she was under the influence of alcohol at the time she was murdered. She was killed in a manner described by one of the probation officers as "particularly painful and awful." As the other officer observed, medical testimony showed that a great deal of force was used by defendant who, over "some period of time," covered the victim's mouth as he applied force six to eight times to her neck before finally succeeding in asphyxiating her. This was not a death caused by a single blow or a short-lived outburst: defendant repeatedly and violently strangled a struggling 16-year-old in the bedroom of his home.

Defendant then attempted to conceal his guilt, not only by moving the body, concealing articles of the victim's clothing, and taking his own clothing to the laundry the next day, but also by attempting to place the blame on another, uninvolved person. Probation Officer Wertz, who had spent up to a dozen interviews with defendant, expressed concern that "In various conversations I have had with [defendant], his main concerned [*sic*] has been what's going to happen to him, how much time he's going to spend . . . . ." The officer found unusual not petitioner's general concern with this question but rather petitioner's primary focus on this issue. Wertz concluded

that state imprisonment would make a greater impression on defendant and serve the purpose of rehabilitation better.

Both Wertz, and the district attorney in argument, expressed concern about various changes in defendant's stories about the crime. The probation officer observed that defendant "confused people with stories. He talks or attempts to justify his act by talking about problems with drugs and that seems to increase, the amount of drugs he talks about, drug use and alcohol use seem to increase the more he talks with people." Wertz indicated he believed focusing on drug and alcohol use by defendant would possibly impede effective treatment.

In addition, Wertz alluded to another story change which the district attorney also stressed in argument. Before and during trial, defendant never admitted to sexual involvement with the victim before her death despite circumstantial evidence to the contrary. As the district attorney noted it was "only when [defendant] finally was at the Youth Authority speaking with a psychiatrist and the psychiatrist accused him of being a lier [*sic*] that he finally assent [*sic*] to the fact that he in fact had had sex with [the victim]." Both Wertz and the district attorney were troubled by the lack of clear motive for the killing. Defendant claimed he killed the victim out of fear for a friend she threatened and fear that the threat might spill over to affect him. On the other hand, he never explained his sexual encounter with the victim.

Finally, the court pointed to a juvenile record indicating increasing contacts with the juvenile system and no apparent rehabilitation. The court also stressed the particularly vicious nature of the crime, a belief that drugs and alcohol did not affect defendant's behavior, and defendant's acts in moving the body and formulating a scheme to avoid detection.

Under the circumstances, I believe the court went far beyond determining punishment solely on the basis of the seriousness of the crime. Faced with a division of opinion from the experts whose job it was to recommend appropriate sentencing, the court carefully considered all relevant factors before rejecting the YA recommendation. In so doing, the court relied upon proper cognizable factors supported by substantial evidence.

One does not have to agree with the court's choice to find the court did not abuse its discretion. Discretion implies choice. Here, the judge's choice was well within the boundaries of appropriate decisionmaking and was am-

ply supported by the evidence. Under the circumstances, I would affirm the court's decision to sentence defendant to commitment in state prison.

Mosk, J., and Kaus, J., concurred.