Filed 6/4/24  In re S.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISFTRICT

DIVISION TWO

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br><br>        Defendant and Appellant. | A167046<br><br>(Contra Costa County<br>Super. Ct. No. J2100525) |

Welfare and Institutions Code section 782 authorizes a juvenile court to dismiss a wardship petition and set aside any findings thereon (Welf. & Inst. Code, § 782, subd. (a)(1)(A)).[1]  Section 782 "requires not just that any dismissal be in the interest of justice, but also promote 'the welfare of the person who is the subject of the petition.' " (*In re J.P.* (2023) 94 Cal.App.5th 74, 80, quoting § 782, subd. (a)(1), and citing *In re Greg F.* (2012) 55 Cal.4th 393, 417.)

The Legislature recently amended section 782 to provide additional guidance to a juvenile court in exercising its discretion whether to dismiss a

---

[1] All undesignated statutory citations are to the Welfare and Institutions Code.

1

petition. (Stats. 2022, ch. 970, § 1, eff. Jan. 1, 2023.) As amended, the statute requires a juvenile court to "consider and afford great weight to evidence offered . . . to prove mitigating circumstances are present, including . . . that the underlying offense is connected to mental illness." (§ 782, subd. (a)(2)(B).) Proof of a mitigating circumstance "weighs greatly in favor" of dismissal. (*Ibid.*)

On January 9, 2023, eight days after the amendment took effect, the minor in this case—who had admitted two counts of assault by means likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4)) and spent a year on probation—moved to dismiss the petition and findings in his case. The juvenile court denied the minor's motion to dismiss. It found that the minor had successfully completed probation, but insufficient evidence connected his offenses to his diagnosed mental disorders. It thus terminated jurisdiction without dismissing the petition. We affirm.

## BACKGROUND

### I.

### *Factual Background*[2]

On December 3, 2021, S.S. was at school talking to his ex-girlfriend when her new boyfriend Logan G. and his friend Tyrell A. walked by. S.S. was a 17-year-old football player who weighed 160 pounds; Logan and Tyrell were 14 years old, and each of them was significantly smaller than S.S. S.S. and Logan argued. Without physical provocation or warning, S.S. punched Logan in the face several times. When Logan fell to the ground, S.S. began punching Tyrell. After Tyrell fell, S.S. continued to punch and kick him as he lay on the ground. Students tried to stop the beating, but S.S. continued to

---

[2] Because there was no contested jurisdictional hearing, we derive the facts from probation reports, as did the parties' briefs.

2

stomp on Tyrell's face and ribs while shouting, "I'ma kill you!" A student videorecorded the beating. Afterward, each boy needed surgery to repair fractures to his face and nose. Logan's nose could not be fully repaired.

In May 2022, while S.S. was on probation arising from the assault, his new high school suspended him for three days because he had sexually harassed a female student. S.S. repeatedly bumped into the girl on purpose when he walked by her. Once, he put his hands on her throat, forcefully kissed her while rubbing her throat, then "pulled his penis completely out of his pants and showed" it to her. On another occasion, he got angry after the girl said she did not want a relationship with him and, when she tried to walk away, grabbed her jacket, turned her around, and hugged her. S.S. told her he would kill himself if "she did not like him back or want to be with him" and showed her what she believed to be "self-harm scars from cutting himself."

## II.

### *Legal Proceedings*

The Contra Costa County District Attorney's Office filed a wardship petition (§ 602) in December 2021 alleging that S.S. had committed two felony counts of assault by means likely to cause great bodily injury, with an enhancement to each count for having caused great bodily injury (Pen. Code, §§ 245, subd. (a)(4), 12022.7, subd. (a)). Later that month, in a negotiated disposition, S.S. pled no contest to each count, and the juvenile court dismissed the enhancements. The court found the petition's allegations true and found S.S. subject to its jurisdiction (Welf. & Inst. Code, § 602, subd. (a)).

The juvenile court conducted a contested dispositional hearing in January 2022. The prosecutor and the victims' families expressed their opposition to the probation department's recommendation that S.S. be

declared a ward of the court and placed on probation with 120 days of home confinement. The court found it a "very difficult case" with "very strong competing factors on both sides." Based on its viewing of the "horrible" video, the court described the beatings as "completely unprovoked, unjustified[,] . . . ruthless[, and] brutal," with no dispute as to who had initiated them and "dominated throughout." It added that S.S. had a "history of fighting at school," usually as the aggressor, for which he had been suspended several times. The court noted his need for services to address "a severe anger management problem." On the other hand, S.S. had no history of arrests, gang involvement, or substance abuse; had strong support from his family and community groups; and showed remorse. The court adopted probation's recommendation, including an order requiring S.S. to participate in counseling as directed by his probation officer in order to address "untreated mental health issues that can be assisted with therapy and other services."

In June 2022, the probation department filed a notice of violation based on S.S.'s above-described harassment of a classmate. The notice (as amended) alleged he had "failed to obey school authorities and was suspended . . . for harassment." S.S. admitted the allegation. In November 2022, the juvenile court accepted the department's recommendation to reinstate probation. The court said it had "struggled with" the decision and reminded S.S. that placing him on probation had been "a close call."

In a report for the November 2022 hearing, the probation department noted S.S. had been diagnosed with intermittent explosive disorder (IED) and depressive disorder; he had been prescribed medication and begun psychiatric treatment for the latter condition. In its order reinstating probation, the court directed S.S., among other things, to take all prescribed psychotropic

4

medications and to participate in any recommended "support services, evaluation, or medication management."

On January 9, 2023, the juvenile court held a probation review hearing. The probation department recommended the court successfully terminate S.S.'s probation and vacate his wardship. At the outset of the hearing, S.S.'s counsel acknowledged that S.S.'s offenses were among those listed in section 707, subdivision (b), so he was not "eligible for automatic sealing under section 786." Counsel orally moved to reduce the felonies to misdemeanors (Pen. Code, § 17, subd. (b)) and to dismiss the petition pursuant to Welfare and Institutions Code section 782.

S.S.'s counsel noted that an amendment to section 782, which had taken effect eight days earlier, provided that when a juvenile court "is terminating its jurisdiction, the court is required to consider and afford great weight to mitigating circumstances. And if any one of those mitigating circumstances are present, then the court is required to afford [it] great weight when considering a dismissal under that section." (See Stats. 2022, ch. 970, § 1.) Citing section 782, subdivision (a)(2)(A), counsel claimed three mitigating circumstances warranted dismissal: S.S. had completed a term of probation successfully; his underlying offense was "connected to mental illness"; and dismissal would not endanger public safety. The People agreed S.S. had "earned . . . a successful termination of his probation" but opposed reducing the offenses or dismissing the petition.

The juvenile court began its ruling by acknowledging S.S. had written "heartfelt" letters of apology, completed 80 hours of community service, and abided by his mother's household rules, and was taking his medication and participating in services and medication management. But the court noted the severity of the assaults, his violation of probation while on home

5

supervision, and his absences from and troubles at school.  It ruled that it therefore would not reduce the offenses to misdemeanors or dismiss the petition under section 782.  The court terminated S.S.'s probation successfully and vacated his wardship.

The court asked if there was "anything further to place on the record." S.S.'s counsel noted that "the recent amendments to [s]ection 782 require the court to make factual determinations," but it had not determined, among other things, "whether the underlying offense was connected to mental illness."  The court then stated that, while S.S. had been diagnosed with IED and depressive disorder, "I do not have sufficient information to connect that particular diagnosis with the incident."[3]

## DISCUSSION

### I.

### *Statutory Framework*

Section 782, subdivision (a)(1) has long given a juvenile court discretion to dismiss a wardship petition, or to set aside its findings and dismiss the petition, "if the court finds that the interests of justice and the welfare of the person who is the subject of the petition require that dismissal, or if it finds that they are not in need of treatment or rehabilitation."  (§ 782, subd. (a)(1).) Section 782 affords jurisdiction to order such a dismissal even if the subject of the petition is no longer a ward of the court.  (See *In re David T.*(2017) 13 Cal.App. 5th 866, 869 [order granting section 782 dismissal over 20 years

---

[3] As to the other mitigating circumstances S.S. raised, the court saw "enough problems while he was on probation" to bar a finding of "satisfactory completion of a term of probation" (§ 782, subd. (a)(2)(A)), and it ruled that his probation violation precluded a finding that "dismissal of the petition would not endanger public safety" (*ibid.*).  S.S. does not challenge those rulings on appeal.

after petition sustained], superseded in other part by statute as noted in *In re Taylor C.* (2024) 101 Cal.App.5th 492.)[4]

In 2022, the Legislature amended section 782 to give juvenile courts guidance in exercising their discretion whether to dismiss a petition, and to require them to give "great weight" to certain mitigating circumstances. (Stats. 2022, ch. 970, § 1, adding subd. (a)(2)(B); see Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2629 (2021–2022 Reg. Sess.) as amended Aug. 16, 2022, Background, ¶¶ 1–2.) The amended statute states that, "When exercising its discretion . . . at the time the court terminates jurisdiction or at any time thereafter, the court shall consider and afford great weight to evidence offered by a person to prove mitigating circumstances are present, including, but not limited to, . . . that the underlying offense is connected to mental illness, prior victimization, or childhood trauma. Proof of the presence of one or more mitigating circumstances weighs greatly in favor of dismissing the petition." (§ 782, subd. (a)(2)(A).) "The reasons for a decision under this section shall be stated orally on the record." (*Id.*, subd. (b).) The legislative history of Assembly Bill No. 2629 (Assembly Bill 2629) shows that its purposes included furthering the juvenile justice system's goal of rehabilitation by enabling those involved in the system to secure dismissals to clear their records of adjudications that can impair their future ability to enlist in the military, secure employment, or qualify for occupational licenses. (See Sen. Com. on Pub. Safety, Analysis of Assem. Bill 2629 (2021–2022 Reg. Sess.) as amended May 23, 2022, Comments, ¶¶ 1–4.)

---

[4] The termination of S.S.'s wardship thus will not prevent him from filing a future motion pursuant to section 782 to seek dismissal of the petition and findings. (§ 782, subd. (a)(1).) We express no opinion as to what effect, if any, the denial of the present motion might have on such a motion.

7

Section 782 specifies that "mental illness" and other terms related to mitigating circumstances "have the same meanings as defined in Penal Code section 1385." (Welf. & Inst. Code, § 782, subd. (a)(2)(F).) Subdivision (c) of that Penal Code provision states that, when a trial court considers whether to strike a sentencing enhancement, it must give "great weight" to specified mitigating circumstances, including a connection between the offense and a mental illness. (Pen. Code, § 1385, subd. (c).) The statute defines a "mental illness" for that purpose as "a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" (DSM) (with certain irrelevant exclusions). (*Id.*, subd. (c)(5).)

## II.

### *Standard of Review*

We review the juvenile court's decision under section 782 for abuse of discretion, while using the substantial evidence standard to review any factual findings underlying its decision. (*In re Greg F.*, *supra*, 55 Cal.4th at p. 417; *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.) The abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.' " (*In re Tony R.* (2023) 98 Cal.App.5th 395, 414.) In applying that standard, we " ' " 'indulge all reasonable inferences to support the decision of the juvenile court.' " ' " (*Id.* at p. 414.)

S.S. contends on appeal that "Substantial evidence does not support the juvenile court's finding that [his] mental illness diagnosis did not qualify as a mitigating circumstance under section 782." Where, as here, an appellant challenges a trial court's failure to make a factual finding in his favor on an

8

issue as to which he bore the burden of proof,[5] the question on appeal becomes "whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.*, at p. 1528, quoting *Roesch v. De Mota* (1944) 24 Cal.2d 563, 571.) That standard is extremely daunting. (See, e.g., *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734 [" 'it is almost impossible for [the party who had the burden of proof below] to prevail on appeal by arguing the evidence compels a judgment in his favor' "].) That

---

[5] The parties have not briefed the issue of who bears the burden of proof as to the existence of a mitigating circumstance under section 782, subdivision (a)(2)(A). Absent such argument, we assume without deciding that the juvenile, as the party seeking relief, bears the burden. (See *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 24 ["the 'general principle' of Evid. Code, § 500 is 'that a party who seeks a court's action in his favor bears the burden of persuasion thereon' "].) By requiring a court to consider "evidence offered by a person to prove mitigating circumstances are present" (§ 782, subd. (a)(2)(A)), the statute strongly implies that the person offering such evidence bears the burden of proof. In construing the similar language of Penal Code section 1385, which requires a court to give "great weight" to mitigating circumstances in deciding whether to strike an enhancement, the Sixth District held that a defendant bears the burden of proving the existence of such a circumstance. (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1095, fn. 5, review granted, Apr. 12, 2023, S278894.) Accordingly, if a defendant appeals from a trial court's failure to find that an offense was "connected to mental illness" (Pen. Code, § 1385, subd. (c)(2)(D)), the question becomes "whether the evidence *compels* a finding in favor of [the defendant] as a matter of law." (*Ortiz*, at p. 1095, fn. 5.) Here, absent a contrary argument, we assume the same principle applies to section 782. (See *In re J.P., supra*, 94 Cal.App.5th at p. 78 [courts construing section 782 often look for guidance to the "closely analogous" Pen. Code, § 1385].)

9

principle applies with even greater force here, for the disputed factual issue is subsidiary to an ultimate determination that we review under the deferential abuse of discretion standard.  (See *In re Tony R.*, *supra*, 98 Cal.App.5th at p. 414 [noting deferential review of section 782 ruling].)

## III.

### *The Mere Submission of Evidence of a Mitigating Circumstance Under Section 782 Does Not Trigger a Rebuttable Presumption*

S.S. contends that by directing a juvenile court to "consider and afford great weight to evidence offered by a person to prove mitigating circumstances are present," subdivision (a)(2)(A) of section 782 "creat[es] a presumption-like burden that a mitigating circumstance exists if there is evidence of such a circumstance."  His argument disregards the legislative history of Assembly Bill 2629, which was amended to eliminate language creating a presumption, and relies on inapposite authority.  We conclude the statute means what it says:  a juvenile court must "afford great weight" to certain evidence, not treat it as creating a presumption in favor of a finding.

The legislative history of Assembly Bill 2629 shows that, in the first version relevant here,[6] the bill would have amended section 782 to provide that, "When exercising its discretion under paragraph (1), at the time the court terminates jurisdiction, or at any time thereafter, there shall be a presumption that the interests of justice and the welfare of the person who is the subject of the petition favor that dismissal.  This presumption shall not be overcome unless there is clear and convincing evidence that dismissal of the

_____

[6] As introduced, the bill merely changed the phrase "he or she" in section 782 to "they."  (Assem. Bill 2629 (2021–2022 Reg. Sess.) as introduced, Feb. 18, 2022.)  It was then amended to add the new subdivision (a)(2), regarding a decision to dismiss a petition, quoted in text.  (Assem. Bill 2629 (2021–2022 Reg. Sess.) as amended, Mar. 24, 2022.)

petition would endanger public safety." (Assem. Bill 2629 (2021–2022 Reg. Sess.) as amended, Mar. 24, 2022.) Two months later, the bill's author amended the paragraph to read as it did when enacted: "When exercising its discretion under paragraph (1) at the time the court terminates jurisdiction or at any time thereafter, the court shall consider and afford great weight to evidence offered by a person to prove mitigating circumstances are present, including, but not limited to, . . . that dismissal of the petition would not endanger public safety, or that the underlying offense is connected to mental illness, prior victimization, or childhood trauma. Proof of the presence of one or more mitigating circumstances weighs greatly in favor of dismissing the petition." (Assem. Bill 2629 (2021–2022 Reg. Sess.) as amended May 23, 2022.)

The amendment of Assembly Bill 2629 undermines S.S.'s claim that the Legislature intended to create a presumption in favor of finding a mitigating circumstance so long as a juvenile offers any evidence thereof. S.S. does not cite anything in the bill's history to suggest that, despite eliminating the explicit "presumption" language in a prior version of the bill, the Legislature intended the "great weight" phrase to create a presumption by implication.

S.S. also relies on two inapposite decisions concerning a trial court's duty to defer to expert determinations about sentencing made by nonjudicial bodies. Neither involved a statute using the phrase "great weight," and neither is relevant here. The first concerned a statute that barred a court from sentencing a minor to state prison "unless . . . the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority." (Former § 707.2, quoted in *People v. Javier A.* (1985) 38 Cal.3d 811, 815, superseded by statute as noted in *People v. Martinez* (1987) 191 Cal.App.3d

11

1372, 1386–1387.) The court applied a judicially created standard construing the provision to mean that "great weight [is] to be given to the Youth Authority's recommendation," which "should 'be followed in the absence of substantial countervailing considerations' [citation], . . . of sufficient weight to overcome the recommendation." (*Javier A.*, at p. 819.) Similarly, in *People v. Martin* (1986) 42 Cal.3d 437 (*Martin*), the court applied a judicially created standard requiring a trial court to give "great weight" to a determination by the Board of Prison Terms that a sentence was " 'disparate in comparison with the sentences imposed in similar cases.' " (*Martin*, at pp. 441, 446 & fn. 2.)

Those decisions involved statutes requiring trial courts to defer to the judgments of bodies in another branch of government—the Youth Authority and the Board of Prison Terms—about matters within those bodies' expertise. In *People v. Walker* (2022) 86 Cal.App.5th 386, 399, review granted, Mar. 22, 2023, S278309, the Second District explained that *Martin*'s discussion of the judicially created "great weight" standard is thus inapplicable to analysis of Penal Code section 1385, subdivision (c), which is the statute requiring a trial court to give "great weight" to mitigating circumstances in deciding whether to strike an enhancement, and the statute from which section 782 incorporates its definition of "mental illness." (*Ibid.*) Here, as in *Walker*, the "great weight" standard is set forth in a statute, section 782, that does not involve deference to a nonjudicial body. Rather, the disputed provision of section 782 concerns a juvenile court's independent performance of a core judicial function—assessing whether evidence supports a requested factual finding.

S.S.'s arguments thus fail to show that section 782's direction to a juvenile court to "consider and afford great weight to evidence offered . . . to

12

prove mitigating circumstances are present" (§ 782, subd. (a)(2)(A)) requires the court to apply a presumption that such circumstances are present whenever the record contains any evidence of such a circumstance.

## IV.

### *The Evidence Did Not Compel a Finding in S.S.'s Favor*

The evidence that S.S.'s offenses were connected to mental illness consists of statements by S.S. and his mother recounted in probation reports, and a letter from a medical social worker. As set forth below, the minor's evidence was not " ' "uncontradicted and unimpeached" and . . . 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" ' " that S.S.'s offenses were connected to mental illness. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1164; *In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

According to the report for the January 2022 disposition hearing, S.S. told a probation officer, "I lost my temper, blacked out." Asked if anger had ever previously made him black out, he replied, "This has happened many times, especially during football. I have an anger problem." S.S. had told his mother that he wanted to kill himself after witnessing a shooting at school. He struggled to deal with bullying on social media and teasing by peers on the football team. S.S.'s mother said he started therapy in May 2019 because she saw signs of depression and anxiety. At the time of the offenses, he had an appointment scheduled to be assessed for medication for depression and impulse control. The probation report stated S.S. was "clearly in need of significant anger management treatment," could benefit from therapy, and should have a medication assessment as soon as possible.

The probation department also submitted a report in November 2022 for the disposition hearing on S.S.'s probation violation. It stated that, after

his probation began in January 2022, S.S. was diagnosed with IED and depressive disorder. An attached September 2022 letter from medical social worker Mara Binkov stated: "[S.S.] was recently involved in a fight at his school, which was a result of being targeted and literally cornered by his classmates. [S.S.'s] mental health diagnosis can also result in blacking out when triggered. [S.S.] was punished through school suspension and legal action with no proof as to who instigated the fight and only video footage showing [S.S.] defending himself." The probation report also stated S.S. had completed a medication assessment, begun psychiatric treatment for depressive disorder, and been prescribed medication for depression. His mother stated he took the medication regularly and found it somewhat helpful.

On appeal, S.S. contends the juvenile court erred in ruling that it lacked sufficient information to connect the offenses to his diagnosed IED and depressive disorder. While he claims that "extensive evidence" showed he displayed symptoms of the disorders near the time of the beatings, he fails to cite persuasive evidence to that effect offered below.

The first pieces of asserted evidence S.S. cites are lists from the DSM of diagnostic criteria for IED and features of depressive disorder. But as the Attorney General notes, S.S. did not cite or submit any part of the DSM to the juvenile court, so we may not consider the material on appeal. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [" 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration' "].)

In reply, S.S. asserts that Penal Code section 1385, as incorporated by section 782, "directs the court, not the defendant, to refer[ to] the most recent edition of the DSM to identify [qualifying] mental disorders." He is incorrect.

14

While the statute defines a mental illness for its purposes as "a mental disorder as identified in the most recent edition of the [DSM]" (Pen. Code, § 1385, subd. (c)(5)), it does not require a juvenile court to sua sponte consult the DSM to identify the symptoms of a disorder and try to correlate them to a juvenile's offenses. Instead, Penal Code section 1385 states that a court "may conclude that a defendant's mental illness was connected to the offense . . . after *reviewing* any relevant and credible evidence." (*Ibid.*, italics added.) The statute presumes, in other words, that a court will take the usual approach of American law: reviewing evidence submitted by the parties, not conducting factual research to gather evidence on its own.

More importantly, the pertinent question is not whether IED and depressive disorder are identified in the DSM, but whether S.S. offered evidence compelling the juvenile court to find his offenses were connected to one of those disorders. The main evidence to that effect was the letter by social worker Mara Binkov. As noted, Binkov described S.S. as having been "involved in a fight" as "a result of being targeted and literally cornered by classmates," and stated there was "no proof as to who instigated the fight and only video footage showing [S.S.] defending himself." Her account is irreconcilable with the juvenile court's findings that S.S. had engaged in an unprovoked, unjustified, and brutal beating of two smaller boys, which he initiated and "dominated throughout." Because Binkov's account was inconsistent with the juvenile court's prior findings, it could have declined to credit her implication that S.S.'s actions were connected to his disorders.

On appeal, recognizing that Binkov's account of the "fight" cannot be reconciled with the juvenile court's explicit findings of a brutal, unprovoked beating, S.S. contends that the only relevant statement in her letter was that his "diagnosis" can cause him to "black[] out when triggered." But Binkov did

15

not state that S.S.'s offenses were in fact connected to IED or in fact resulted from his blacking out during the incident; she merely noted that his "mental health diagnosis can also result in blacking out when triggered." That general statement of possibility did not compel the court to find that that is what happened in this case.

S.S. also cites his own statement, recounted in the January 2022 probation report, that he "lost [his] temper, blacked out"; that such blackouts had "happened many times"; and that he has "an anger problem." He adds that the facts of the encounter themselves show that he responded to an argument with disproportionate violence. But while his self-serving statement and the facts of the beating may constitute some evidence that the offenses were connected to mental illness, we cannot say that the evidence was " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient' " to prove a mitigating circumstance. (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) The evidence could have supported such a finding, but it did not *compel* one.

S.S. also contends that the probation department's and juvenile court's observations that he could benefit from anger management, medication assessment, and counseling, and the court's imposition of related probation terms, constitute evidence that his offenses were connected to his IED and/or depressive disorder. They do not. They represent forward-looking assessments of how to maximize S.S.'s chances of rehabilitation, not evidence about why he committed the past offenses that brought him within the court's jurisdiction. To the extent the cited statements and orders rested on evidence, it was the same evidence that, as discussed above, is insufficient to compel a finding that the offenses were connected to mental illness.

16

S.S. contends it is "not clear" the juvenile court understood the scope of its discretion under section 782, as amended, when it assessed whether his offenses were connected to mental illness. But "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) We also presume, absent "an affirmative record to the contrary," that it "considered all of the relevant factors." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) That settled rule is "an aspect of the presumption that judicial duty is properly performed." (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other ground by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) The record here reflects no comment by the juvenile court misstating the law. To the contrary, it shows that S.S.'s counsel accurately summarized and quoted the amended provisions of section 782 at the hearing, ensuring the court was not only presumptively but actually aware of the applicable law.

Finally, in a related argument, S.S. briefly asserts that the juvenile court may not have "considered the correct standard" in determining whether his offenses were connected to mental illness. As he recognizes, section 782 does not define the phrase "connected to" as used to identify the mitigating circumstance that an offense was "*connected to* mental illness." (§ 782, subd. (a)(2)(A), italics added.) But Penal Code section 1385, whose definition of "mental illness" section 782 incorporates by reference, states that a court "may conclude that a defendant's mental illness was connected to the offense if . . . the defendant's mental illness *substantially contributed* to the defendant's involvement in the commission of the offense." (Pen. Code, § 1385, subd. (c)(5), italics added.) S.S. contends the use of the phrase "substantially contributed" in Penal Code section 1385, as incorporated by reference in section 782, adopts the "substantial factor" test of causation used

17

in tort law and in some criminal contexts.  (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 969 [discussing "substantial factor" test of but-for causation in tort, which excludes "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury"]; *People v. Caldwell* (1984) 36 Cal.3d 210, 220 [similarly defining "substantial factor" test for whether criminal act caused death].)  But as set forth below, S.S. offers no support for his theory, and persuasive authority rejects it.

S.S. cites nothing in the legislative history of Assembly Bill 2629, or of the 2021 bill amending Penal Code section 1385 (Stats. 2021, ch. 721, § 1, eff. Jan. 1, 2022), to suggest the Legislature intended the phrase "substantially contributed" to integrate the distinct legal term of art "substantial factor."  Nor does he cite any authority construing Penal Code section 1385, or section 782, in that way.  Most importantly, he does not explain why, if the Legislature meant to impose a "substantial factor" test, it did not simply use that phrase.  It could have enacted a provision stating, "the defendant's mental illness *was a substantial factor in* the defendant's involvement in the commission of the offense," but it did not.  " ' "[W]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language." ' " (*People v. Gonzales* (2017) 2 Cal.5th 858, 871.)  By the same token, we may assume that, if the Legislature intends a statute to have the meaning and effect of a legal term of art, it will use that term of art in the text of the statute.

S.S.'s argument also overlooks the broader history of the phrase "substantially contributed" as used in Penal Code section 1385.  As a leading treatise explains, the Legislature likely intended the term to impose a fairly demanding standard.  (Couzens, et al., Sentencing California Crimes

18

(The Rutter Group 2023) § 12:11.) "The use of the phrase 'substantially contributed' is unclear. Likely it is the intent of the Legislature that the factor plays some significant role in the commission of the crime or the defendant's involvement. In other circumstances, the Legislature used the phrase 'a contributing factor in the commission of the offense.' (See, e.g., [Pen. Code,] § 1170, subd. (b)(6) [Factor affecting imposition of the low term of imprisonment].) While 'contributing factor' suggests the court must find the factor to have some connection, however slight, [to] the commission or circumstances of the crime, the phrase 'substantially contributed' clearly implies a factor more significant in weight from that of 'contributing factor.'" (*Ibid.*) As Couzens notes, the same Legislature enacted both the amendment adding the "substantially contributed" test to Penal Code section 1385 and the amendment adding the "contributing factor" test to Penal Code section 1170. (*Ibid.*) That circumstance strengthens the inference that it intended "substantially contributed" to mean something more than "contributing factor." (*Ibid.*) We thus reject S.S.'s unsupported speculation that the Legislature intended the phrase to impose a "substantial factor" test.

## DISPOSITION

The order denying the minor's section 782 motion is affirmed.

19

_____
Mayfield, J.*

We concur:

_____
Stewart, P.J.

_____
Miller, J.

*In re S.S. (*A167046)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.